GENOAL BLALOCK, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, Respondent

No. COA99-1559

(Filed 15 May 2001)

### 1. Nurses— registration of misconduct—final agency decision—whole record test—substantial evidence

The trial court did not err by affirming the final agency decision of the Department of Health and Human Services to substantiate and register findings of abuse and neglect of nursing home residents, and misappropriation of resident property on the part of petitioner certified nurse assistant, because the whole record test reveals substantial evidence that: (1) four of petitioner's coworkers testified that petitioner engaged in the misconduct at issue on several occasions; (2) petitioner made incriminating statements to her coworkers; and (3) a resident's physical condition improved shortly after petitioner was discharged.

### 2. Nurses— registration of misconduct—final agency decision—whole record test—not arbitrary and capricious

The trial court did not err by affirming respondent agency's final decision to substantiate and register findings of abuse and neglect of nursing home residents, and misappropriation of resident property on the part of petitioner nurse assistant even though petitioner contends the decision was arbitrary and capricious, because the whole record test reveals that: (1) there was no unfairness or lack of careful consideration on the agency's part when the agency made findings of fact indicating the existence of substantial evidence to support its decision; (2) the agency's final decision stated specific reasons why it did not adopt the administrative law judge's (ALJ) recommended decision as its final decision as required by N.C.G.S. § 150B-36(b); and (3) the agency's final decision provided substantial reasons, including the credibility of witnesses, for rejecting the ALJ's recommended decision.

### 3. Nurses— registration of misconduct—final agency decision—de novo review—not affected by errors of law

The trial court did not err by affirming respondent agency's final decision to substantiate and register findings of abuse and

BLALOCK v. N.C. DEP'T OF HEALTH AND HUMAN SERVS.

[143 N.C. App. 470 (2001)]

neglect of nursing home residents, and misappropriation of resident property on the part of petitioner nurse assistant even though petitioner contends the decision was affected by errors of law, because a de novo review reveals that: (1) petitioner's argument that she was excluded from the agency's investigation, and thus denied due process, is unpersuasive when there is no indication that petitioner was denied adequate notice or a meaningful opportunity to be heard, the agency gave petitioner written notice of its intent to investigate the allegations against her as required by N.C.G.S. § 150B-23(f), the agency gave petitioner written notice of its findings, and petitioner exercised her right to a contested hearing under N.C.G.S. § 150B-25; and (2) although petitioner argues that the agency improperly shifted the burden of proof to petitioner to prove that the accusations lodged against her were untrue, no burden was placed on petitioner to prove a motive for witness fabrication when the agency listed numerous reasons for rejecting the administrative law judge's recommended decision, and the lack of any proof of motive concerning why a witness would fabricate the allegations against petitioner was merely one of the many factors the agency considered in determining witness credibility.

Appeal by petitioner from an order entered 12 July 1999 by Judge Russell G. Walker, Jr. in Stanly County Superior Court. Heard in the Court of Appeals 12 February 2001.

*Doran and Shelby, P.A., by Michael Doran, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Jane L. Oliver, for respondent-appellee.*

HUNTER, Judge.

Genoal Blalock ("petitioner") appeals from the trial court's order affirming the North Carolina Department of Health and Human Services, Division of Facility Services' ("the agency") decision to substantiate findings of abuse, neglect, and misappropriation of resident property on the part of petitioner. On appeal, petitioner contends that (1) the trial court erred in affirming the agency's final decision because it was not supported by substantial evidence and was arbitrary and capricious, and (2) the agency's decision was affected by errors of law. As to both contentions, we disagree. Accordingly, we affirm the decision of the trial court.

Petitioner worked as a certified nurse assistant ("CNA") at Autumn Care Nursing Home ("the facility") in Salisbury, North Carolina from July 1991 until September 1996. In late August 1996, the facility received a report from another CNA that petitioner had physically and verbally abused a resident during July 1996. Based on this report, the facility reported the allegation of abuse to the agency and then began an internal investigation. From its internal investigation, the facility concluded that petitioner had physically and verbally abused the resident as had been alleged. Consequently, the facility's Assistant Director of Nursing terminated petitioner's employment on 5 September 1996. Petitioner did not appeal her termination.

By letter dated 28 October 1996, the agency notified petitioner that it would conduct its own investigation to determine whether or not her alleged conduct should result in findings of patient abuse on her part and be placed on the Nurse Aide Registry and the Health Care Personnel Registry ("Registries"). The agency's letter informed petitioner that an investigator would contact her to obtain her account of the allegation. Additionally, the letter notified petitioner of her appeals rights and her opportunity to use informal procedures to resolve any dispute she had with the agency's action. Subsequently, Wayne Denning ("Denning"), an abuse investigator, was assigned to petitioner's case. During the course of his investigation, Denning interviewed petitioner by telephone and, petitioner denied any wrongdoing. Additionally, Denning interviewed other facility employees and reviewed the facility's personnel and medical records. Further, Denning interviewed a CNA who was a former facility employee; this individual contacted Denning to provide additional information pertaining to his investigation.

Upon completing his investigation, Denning substantiated twenty-two allegations involving abuse, neglect, or misappropriation of resident property on the part of petitioner. By letter dated 21 August 1997, Denning informed petitioner of the nature of each substantiated allegation and gave her a summary of the evidence. This letter informed petitioner of the agency's intent to place its findings on the Registries and informed her of her rights of appeal.

Subsequently, petitioner filed for a contested case hearing in the Office of Administrative Hearings on 24 September 1997, challenging the agency's decision to place its findings on the Registries. The hearing was held on 4 and 5 December 1997 before Administrative Law Judge ("ALJ") Beecher R. Gray. At the hearing, the agency decided to

limit its prosecution to only six incidents involving five residents. On 12 February 1998, ALJ Gray issued a Recommended Decision that the agency's decision be dismissed as not supported by the evidence.

Thereafter, the agency filed exceptions and objections to the Recommended Decision on 23 April 1998. After its review, the agency issued a Final Agency Decision on 7 May 1998, rejecting the ALJ's Recommended Decision and upholding the agency's initial decision to substantiate findings of abuse, neglect, and misappropriation of resident property on the part of petitioner.

Petitioner filed for judicial review of the Final Agency Decision in Stanly County Superior Court on 12 June 1998. A hearing was held at the 7 June 1999 session of superior court, the Honorable Russell G. Walker, Jr. presiding. By order filed on 12 July 1999, Judge Walker affirmed the Final Agency Decision. Petitioner appeals.

[1] In her first assignment of error, petitioner maintains that the trial court erred in affirming the agency's final decision because it was not supported by substantial evidence. We disagree.

Where there is an appeal to this Court from a trial court's order affirming an agency's final decision, we must "(1) determine the appropriate standard of review and, when applicable, (2) determine whether the trial court properly applied this standard." *In re Appeal by McCrary*, 112 N.C. App. 161, 166, 435 S.E.2d 359, 363 (1993). "[T]he standard of review which should be employed in reviewing an agency decision depends upon the nature of the alleged error." *Id.* Where petitioner alleges that the agency's decision was not supported by substantial evidence, or was arbitrary and capricious, the whole record test is applied. *See ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). The trial court's order affirming the agency's decision indicates that the whole record test was applied. Therefore, we must determine whether the test was applied properly.

Under the whole record test, the entire record is examined to determine whether the agency decision is supported by substantial evidence. *See id.* " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (quoting *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)). If substantial evidence supports an agency's decision after the entire

record has been reviewed, the decision must be upheld. *See In re Appeal by McCrary,* 112 N.C. App. 161, 168, 435 S.E.2d 359, 365.

Significantly, the whole record test requires the court to consider both evidence justifying the agency's decision and contrary evidence that could lead to a different result. *Id.* at 167-68, 435 S.E.2d. at 364. However, the test "does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo* . . . ." *Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). We further recognize that witness credibility and the probative value of testimony are determined by the administrative agency, which may accept or reject any or all of a witness's testimony. *See Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 406, 269 S.E.2d 547, 565 (1980).

Primarily, petitioner contends that the eyewitness testimony the agency relied upon in reaching its decision is inadequate to support the conclusion that she committed the alleged misconduct. To support her contention, petitioner asserts that testimony by the agency's witnesses was inconsistent, the agency's witnesses were biased and delayed reporting the alleged misconduct, and there was no evidence of significant physical injury to residents. However, a review of the entire record shows substantial evidence that supports the agency's decision: (1) credible eyewitness testimony from four of petitioner's coworkers that petitioner engaged in the misconduct at issue on several occasions; (2) testimony regarding incriminating statements that petitioner made to her coworkers, and; (3) evidence that a resident's physical condition improved shortly after petitioner was discharged. Based upon our review of the entire record, we conclude that the agency's final decision is supported by substantial evidence. Therefore, petitioner's first assignment of error is rejected.

[2] Petitioner's second assignment of error is that the trial court erred in affirming the agency's final decision because it was arbitrary and capricious. Again, we disagree.

In addition to her contention that the decision was not supported by the evidence, petitioner asserts as additional evidence of the agency's arbitrariness: (1) the agency's reliance on petitioner's credibility in a case in 1996 when she reported a coworker's act of abuse and its later rejection of petitioner's credibility in reference to her

denials of misconduct in this case, (2) the manner in which the agency conducted its investigation, and (3) the agency's disregard of petitioner's character witnesses. We begin by noting that the

> "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are . . . "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment'. . . ."

*Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989) (quoting *Comr. of Insurance*, 300 N.C. 381, 420, 269 S.E.2d 547, 573). Moreover, "the reviewing court does not have authority to override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law." *Lewis*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714.

Our review of the whole record reveals no unfairness or lack of careful consideration on the agency's part. The agency made findings of fact indicating the existence of substantial evidence to support its decision. Within those findings, the agency considered petitioner's credibility, petitioner's character witnesses, and Denning's investigation. Furthermore, we note that the agency met the requirements for rejecting the ALJ's recommendation. As required by N.C. Gen. Stat. § 150B-36(b) (1999), the agency's final decision stated specific reasons why it did not adopt the ALJ's Recommended Decision as its final decision. Also, the agency's final decision provided substantial reasons, including the credibility of witnesses, for rejecting the ALJ's Recommended Decision. We reiterate that although an ALJ makes a Recommended Decision, it is for the agency to decide the credibility of witnesses and conflicts in the evidence. *See Oates v. N.C. Dept. of Correction*, 114 N.C. App. 597, 601, 442 S.E.2d 542, 545 (1994). In sum, the record does not demonstrate that the agency acted in less than good faith. Thus, the entire record before us indicates that the agency's final decision was neither arbitrary nor capricious. Petitioner's second assignment of error, therefore, is overruled.

[3] Finally, petitioner's third assignment of error is that the agency's decision was affected by errors of law. Yet again, we disagree.

Where a petitioner argues that the agency's final decision was based on an error of law, the trial court must conduct a *de novo* review. *See Eury v. N.C. Employment Security Comm.*, 115 N.C. App. 590, 597, 446 S.E.2d 383, 387 (1994). *De novo* review requires a

court to consider the question anew, as if the agency has not addressed it. *See id.* Therefore, "where the trial court should have utilized *de novo* review, this Court will directly review the agency's decision under a *de novo* review standard." *In re Appeal by McCrary,* 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (emphasis in original). At bar, petitioner's argument can be distilled into two parts.

The first part of petitioner's argument is that the agency "excluded petitioner from any meaningful participation or input in the investigative process" and thus violated her state and federal constitutional rights to due process. Specifically, petitioner claims the investigation was "inadequate" and she was denied a meaningful opportunity to be heard because the agency's investigator only spoke with her in a single twenty-minute telephone call during his entire investigation.

"In North Carolina, due process requires adequate notice and an opportunity to be heard." *Frizzelle v. Harnett County,* 106 N.C. App. 234, 239, 416 S.E.2d 421, 423 (1992). The opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66 (1965). Here, petitioner's argument that she was excluded from the agency's investigation, thus denied due process, is unpersuasive. Viewing the record *de novo,* we find no indication that petitioner was denied adequate notice or a meaningful opportunity to be heard. As required by N.C. Gen. Stat. § 150B-23(f) (1999), the agency gave petitioner written notice in October 1996 of its intent to investigate the allegations against her. Subsequently, petitioner had an interview with Denning and remained free to contact him during the remainder of his investigation. After concluding its investigation, the agency gave petitioner written notice in August 1997 of its findings. Both letters to petitioner described her rights to appeal. Further, petitioner exercised her right to a contested case hearing. Pursuant to N.C. Gen. Stat. § 150B-25 (1999), the hearing afforded petitioner the opportunity to present arguments and evidence, and to cross-examine her accusers before the agency made its final decision.

In support of her argument, petitioner cites *Bishop v. N.C. Dept. of Human Resources,* 100 N.C. App. 175, 394 S.E.2d 702 (1990). However, *Bishop* is distinguishable from the present case. In *Bishop,* the petitioner was a state employee whose due process rights were violated when her employer made a final decision to discharge her *without first* giving her an opportunity to be heard. *See id.* In con-

trast, petitioner in the present case was given notice and an opportunity to be heard *before* the agency made its final decision.

The second part of petitioner's argument is that the agency improperly shifted "the burden of proof to petitioner to prove that the accusations lodged against her were untrue." Petitioner points out that, among its reasons for rejecting the ALJ's Recommended Decision, the agency noted four times that "there was no motive presented as to why [the witness] would fabricate [the allegations against petitioner]." Petitioner asserts that these four comments indicate that the burden of proof was improperly shifted to her. We find that this fabrication issue was not mentioned within the "Findings of Fact" or "Conclusions of Law" sections of the agency's final decision. Instead, the four comments were mentioned in the "Memorandum" section of the agency's final decision. Additionally, in that portion of its decision, the agency listed numerous other reasons for rejecting the ALJ's Recommended Decision. Based on those reasons, it is clear that no burden was placed upon petitioner to prove a motive for fabrication. Rather, the lack of any proof of motive was merely one of many factors the agency considered in determining witness credibility.

The only case petitioner cites on this issue is *Dillingham v. N.C. Dep't of Human Res.*, 132 N.C. App. 704, 513 S.E.2d 823 (1999). Petitioner quotes this Court's holding in *Dillingham* as follows: "To the extent respondent agency's final decision was based upon petitioner's failure to present sufficient *written* evidence to support his claim that the asset transfers occurred for a purpose exclusive of eligibility for Medicaid benefits, the decision was affected by an error of law." *Id.* at 711, 513 S.E.2d at 828 (emphasis in original). No improper shift in the burden of proof was at issue in *Dillingham*. Thus, the quotation, taken out of context, is irrelevant to the case *sub judice*. Our *de novo* review leads us to conclude that the agency's final decision was not affected by errors of law.

Thus, we hold that the agency's final decision is supported by substantial evidence, was neither arbitrary nor capricious, and was not affected by errors of law.

Affirmed.

Chief Judge EAGLES and Judge CAMPBELL concur.