MICHELLE ANN KISSLO, Plaintiff
v.
GEORGE TATUM, COMMISSIONER, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Defendant.
No. COA09-104.
Court of Appeals of North Carolina.
Filed November 3, 2009.
This case not for publication
Attorney General Roy Cooper, III, by Assistant Attorney General Kathryne E. Hathcock, for defendant-appellee.
Charles L. White for plaintiff-appellant.
ROBERT C. HUNTER, Judge.
Michelle Ann Kisslo ("plaintiff") appeals from the trial court's judgment affirming defendant North Carolina Division of Motor Vehicle's ("DMV") revocation of plaintiff's conditional driving privileges. After careful review, we affirm.

Background
Plaintiff was convicted of driving while impaired ("DWI") three times between 1996 and 2002. Plaintiff's driving privileges were permanently revoked on 26 June 2002. On 11 May 2007, plaintiff entered into a conditional restoration agreement (the "agreement") which granted her limited driving privileges effective 21 May 2007 until 20 April 2010.[1] The agreement stated, inter alia:
02. Licensee promises and agrees that [s]he will under no circumstances drive or operate or attempt to drive or operate any motor vehicle upon the public streets, highways or public vehicular areas after having consumed any type of alcoholic beverages, drugs or other impairing substances.
. . . .
10. Not violate of [sic] any policies, procedures or requirements of the Ignition Interlock program.
(emphasis added).
On 8 August 2007, an Ignition Interlock System ("Interlock System"), used to measure and report blood alcohol content ("BAC"), was installed in plaintiff's vehicle. Pursuant to the agreement "check-list[,]" plaintiff was aware of the following condition: "The Ignition Interlock device will be monitored and the results reported to the DMV at least once every sixty (60) days. Failure to appear as directed by the provider or failure to follow the proper operating instructions will result in cancellation of your Conditional Restoration agreement."
The record indicates that after installation of the Interlock System, the device registered the following BAC readings: (1) 9 August 2007 (.024 at 8:43 a.m.); (2) 17 August 2007 (.038 at 8:43 a.m., .037 at 8:49 a.m., .036 at 8:52 a.m., and .029 at 9:00 a.m.); (3) 24 August 2007 (.077 at 8:50 a.m.); (4) 10 September 2007 (.036 at 10:37 a.m.); (5) 11 September 2007 (.021 at 8:24 a.m.); (6) 15 September 2007 (.063 at 9:55 a.m. and .048 at 10:12 a.m.). On 8 October 2007, a "Client Response Form" was sent to plaintiff with the above readings listed. On the form plaintiff responded: "The fails are due to cough meds from having strep throat. Unknowing the alcohol content. The warnings are due to chewing gum. Each time I called the 1-800 # to let them know the reasons why." On 8 October 2007, Interlock System technician Thomas Smith ("Smith") signed an affidavit in which he stated, inter alia:
3. The ignition interlock device conducts a test, which is alcohol specific and yields an alcohol reading only if alcohol is present. . . .
4. Petitioner has been instructed and warned of the necessity to test with a clean mouth cavity to prevent violation readings due to alcohol contaminants from foodstuffs and drinks other than alcoholic beverages as these contaminants may record temporary mouth-alcohol readings.
5. Petitioner has been instructed and warned not to perform the interlock test after utilizing other contaminants such as cough medicines, inhalants and/or other medications that may contain alcohol and which could also cause temporary mouth-alcohol readings.
Smith indicated on the affidavit that "[t]he pattern of alcohol WARNS and/or FAILS from saved data log records indicate true BAC reading(s)[.]" (emphasis in original). Under a section entitled "Technician Professional Opinion[,]" Smith stated that the lack of follow-up passes also led to his opinion that the readings were true BAC readings. The affidavit further stated that the Interlock System was "operational and performing within established calibration standards."
On 18 October 2007, a "Non-Compliance Report" was issued to the DMV and plaintiff due to "one or more bac readings on monitor report[.]" On 7 December 2007, DMV notified plaintiff of an administrative hearing to be held on 14 January 2009 to determine whether she had violated the terms of the conditional restoration agreement. At the hearing, before Hearing Officer R.E. Murdock, plaintiff claimed that the alcohol readings were due to mouth contaminants such as toothpaste, medication to treat a sore throat, and chewing gum. She claimed that she had been rinsing her mouth with water as instructed, but she continued to have positive alcohol readings. A friend of plaintiff's, Cheryl Thompson ("Thompson"), testified on behalf of plaintiff and stated that plaintiff was confused about the operation of the Interlock System, and that to the best of her knowledge plaintiff had not been drinking alcohol since her license was conditionally restored.
On 14 January 2008, Hearing Officer Murdock issued an Administrative Hearing Decision in which he concluded that plaintiff had violated condition two of the conditional restoration agreement. Plaintiff's conditional driving privileges were thus revoked. Plaintiff filed a writ of certiorari with the Superior Court of Guilford County. On 11 September 2008, upon a whole record review, the trial court affirmed the decision of the hearing officer. On 16 October 2008, plaintiff appealed the trial court's judgment to this Court.

Standard of Review
"The superior court judge sits as an appellate court on review pursuant to writ of certiorari of an administrative decision." Blue Ridge Co., L.L.C. v. Town of Pineville, 188 N.C. App. 466, 469, 655 S.E.2d 843, 845, disc. review denied, 362 N.C. 679, 669 S.E.2d 742 (2008). If a petitioner appeals an administrative decision "on the basis of an error of law, the trial court applies de novo review; if the petitioner alleges the decision was arbitrary and capricious, or challenges the sufficiency of the evidence, the trial court applies the whole record test." Id. at 469, 655 S.E.2d at 845-46.
The trial court in this case applied a whole record review. "Under the whole record test, the entire record is examined to determine whether the agency decision is supported by substantial evidence." Blalock v. N.C. Dep't of Health and Human Servs., 143 N.C. App. 470, 473, 546 S.E.2d 177, 180 (2001). "`Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lackey v. Dept. of Human Resources, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (quoting Comr. of Insurance v. Fire Insurance Rating Bureau, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)). "If substantial evidence supports an agency's decision after the entire record has been reviewed, the decision must be upheld." Blalock, 143 N.C. App. at 473-74, 546 S.E.2d at 181.
"When reviewing an appeal from a petition for writ of certiorari in superior court, this Court's scope of review is two-fold: (1) examine whether the superior court applied the appropriate standard of review; and, if so, (2) determine whether the superior court correctly applied the standard." Cole v. Faulkner, 155 N.C. App. 592, 596, 573 S.E.2d 614, 617 (2002).
Here, plaintiff does not contend that the trial court applied the wrong standard of review. Therefore, we limit our discussion to whether the trial court correctly applied a whole record review.

Analysis
Plaintiff's two arguments in this case pertain to the agency's conclusion that she violated condition two of the conditional restoration agreement. Plaintiff claims that: (1) there was insufficient evidence in the whole record to find that she violated condition two by consuming an alcoholic beverage; and (2) assuming that she had consumed an alcoholic beverage, she did not "attempt" to operate a vehicle. We will address each argument in turn.

I.
First, plaintiff argues that the trial court erred by finding that the DMV's record contained substantial evidence which supported the DMV's findings of fact and conclusions of law, and that the DMV's decision was not arbitrary and capricious.[2]
Condition two of the agreement stated: "Licensee promises and agrees that [s]he will under no circumstances drive or operate or attempt to drive or operate any motor vehicle upon the public streets, highways or public vehicular areas after having consumed any type of alcoholic beverages, drugs or other impairing substances." (emphasis added). Hearing Officer Murdock concluded as a matter of law that the BAC readings recorded by the Interlock System were "true BAC readings" and therefore condition two was violated. Although the term "true BAC reading[]" is not defined in the record, it is clear that the hearing officer concluded that the BAC readings were due to the consumption of an alcoholic beverage and not an innocent contaminant.
It is important to note that upon plaintiff's motion, the trial court struck finding of fact 12 from the administrative hearing decision and refused to consider it as part of the record because the finding pertained to Hearing Officer Murdock's personal training with the Ignition Interlock device and his knowledge of how the device reads BAC levels. Nevertheless, the trial court found that there was competent, material, and substantial evidence in the record to support the agency's revocation of plaintiff's conditional driving privileges. We agree.
The evidence established that plaintiff was given an Interlock System user's manual which warned of the possibility that "innocent" contaminates, such as mouthwash and cough medicine, could cause an alcohol reading on the Interlock System. However, she was also informed that "[s]uch alcohol contamination is temporary and is not accepted by the division of motor vehicles or other jurisdictions as a valid reason for alcohol test failure. You must remove all alcohol contamination from the breath before testing." (emphasis added). At the time of the conditional restoration conference, Hearing Officer Murdock reiterated the warnings from the user's manual and how to prevent alcohol readings from contaminants, particularly the need to rinse the mouth with water before blowing into the Interlock System.
Nevertheless, at the administrative hearing, plaintiff claimed that contaminants were the cause of the BAC readings, despite her attempts to rinse them away. Plaintiff explained that she was confused about how the Interlock System worked and how the contaminates continued to cause BAC readings. Plaintiff offered no explanation for the BAC readings on 17 August 2007.
Thompson testified that plaintiff was in fact confused and further stated that to the best of her knowledge plaintiff had not been drinking since her license was conditionally restored. Hearing Officer Murdock concluded that plaintiff was not credible and that the testimonies appeared "rehearsed." See In re Appeal of General Tire, 102 N.C. App. 38, 40, 401 S.E.2d 391, 393 (1991) (noting that "the credibility of the witnesses and resolution of conflicting testimony is a matter for the administrative agency to determine").
Furthermore, the cold record contradicts plaintiff's claims. The Interlock System recorded ten different BAC readings on six different days. According to the user's manual, if these BAC readings were due to innocent contaminants, the readings would have been temporary. Despite plaintiff's claim that she rinsed with water, on several days there were multiple BAC readings. Moreover, the Monitech technician stated in his affidavit that the readings were "true BAC readings."[3] He based this opinion on the saved data log, which revealed the BAC readings and times, and on the lack of follow-up passes.
Based on the whole record, with the exception of finding of fact 12, the trial court concluded that the hearing officer's ultimate determination to revoke plaintiff's driving privileges, was supported by competent evidence and was not arbitrary and capricious. We find no error in the trial court's judgment.

II.
Next, plaintiff asserts that she did not "attempt" to drive or operate the vehicle after the Interlock System detected alcohol and therefore she did not violate condition two. Plaintiff testified that once a BAC reading was registered, she found alternative transportation and never started the car.
This Court recently addressed this issue and held:
[A]n act short of turning on the ignition is sufficient to constitute an "attempt" within the meaning of . . . the conditional restoration agreement. Since a person with an ignition interlock device cannot start his car-and thus operate it-without successfully blowing into the ignition interlock device, such an act goes beyond mere preparation and constitutes the necessary overt act.
Brunson v. Tatum, __ N.C. App. __, __, 675 S.E.2d 97, 102 (2009). In other words, when an individual blows into the Interlock System, with the intent of driving, an attempt to operate the vehicle occurs and the presence of alcohol may signify a violation of the conditional restoration agreement. Id. We are bound to follow the holding of Brunson in this case. In the Matter of Appeal from Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding that "a panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court"). There is no dispute that plaintiff blew into the Interlock System with the intent to drive the vehicle, therefore, pursuant to Brunson, plaintiff attempted to operate the vehicle. Additionally, there was sufficient evidence, as discussed supra, to find that plaintiff had consumed an alcoholic beverage.
Thus, we find that the trial court did not err in upholding the agency's decision, which found that plaintiff violated condition two of the conditional restoration agreement.

Conclusion
We hold that the trial court did not err in finding that there was sufficient evidence in the whole record to support the agency's decision to revoke plaintiff's diving privileges and that the decision was not arbitrary and capricious.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] The agreement was amended on 25 June 2007.
[2] Plaintiff does not assign error to any specific finding of fact or conclusion of law; rather, she argues that there was not substantial evidence in the whole record to establish a violation of condition two of the agreement.
[3] Again, "true BAC reading" is not defined in the record, but it is clear that the technician was distinguishing readings that resulted from actual blood alcohol content from readings resulting from an innocent mouth contaminant.