**WAKEMED v. N.C. DEP'T OF HEALTH**

[222 N.C. App. 755 (2012)]

WAKEMED, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, CERTIFICATE OF NEED SECTION, Respondent, and REX HOSPITAL, INC., d/b/a REX HEALTHCARE, HOLLY SPRINGS SURGERY CENTER, LLC, and NOVANT HEALTH, INC., REX HOSPITAL, INC., d/b/a REX HEALTHCARE, Petitioner v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, CERTIFICATE OF NEED SECTION, Respondent, and WAKEMED, HOLLY SPRINGS SURGERY CENTER, LLC and NOVANT HEALTH, INC.

No. COA11-1558

(Filed 4 September 2012)

## 1. Hospitals and Other Medical Facilities—surgery center—CON application—not impermissibly amended

The North Carolina Department of Health and Human Services, Division of Health Service Regulation did not err by approving Holly Springs Surgery Center, LLC's (HSSC) Certificate of Need (CON) application. HSSC did not impermissibly amend · its application after it was submitted to the CON Section because the missing application sections and the missing letter of support filed by HSSC did not constitute material amendments to its CON application.

## 2. Hospitals and Other Medical Facilities—surgery center—CON application—statutory criteria complied with

Petitioners WakeMed's and Rex's arguments in a Certificate of Need (CON) case that respondent Holly Springs Surgery Center, LLC's CON application did not comply with all review criteria provided in N.C.G.S. § 131E-183(a) was overruled.

## 3. Hospitals and Other Medical Facilities—surgery center—CON application—comparative analysis—statutory criteria complied with

Petitioner WakeMed's contention that the Department of Health and Human Services, Division of Health Service Regulation's comparative analysis failed to properly consider the statutory criteria provided in N.C.G.S. § 131E-183(a)(3), (6), (13), and (18a) was overruled. There was substantial evidence to support the conclusion that the Certificate of Need Section properly approved Holly Springs Surgery Center, LLC's application.

Appeal by petitioners from final agency decision entered 31 August 2011 by Director Drexdal Pratt of the North Carolina Department of Health and Human Services, Division of Health Service Regulation. Heard in the Court of Appeals 6 June 2012.

*Smith Moore Leatherwood LLP, by Maureen Demarest Murray, Terrill Johnson Harris, and Allyson Labban, for petitioner-appellant WakeMed.*

*K&L Gates LLP, by Gary S. Qualls, Colleen M. Crowley, and Susan K. Hackney, for petitioner-appellant Rex Hospital, Inc., d/b/a Rex Healthcare.*

*Williams Mullen, by Marcus C. Hewitt and Elizabeth Sims Hedrick, for respondents-intervenors-appellees Holly Springs Surgery Center, LLC and Novant Health, Inc.*

*Attorney General Roy Cooper, by Assistant Attorney General Scott Stroud, for respondent-appellee North Carolina Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section.*

HUNTER, Robert C., Judge.

Petitioners-appellants WakeMed and Rex Hospital, Inc., d/b/a Rex Healthcare ("Rex") (collectively "petitioners"), appeal from the 31 August 2011 final agency decision of the North Carolina Department of Health and Human Services, Division of Health Service Regulation ("the Agency"). In that decision, the Agency concluded that a certificate of need to develop three operating rooms in Wake County was properly awarded by the Agency's Certificate of Need Section ("CON Section") to Holly Springs Surgery Center, LLC ("HSSC"), a subsidiary of Novant Health, Inc. ("Novant"), rather than to WakeMed or to Rex. On appeal, WakeMed and Rex ask this Court to reverse the final agency decision and to direct the CON Section to issue the certificate of need to WakeMed or Rex, respectively. After careful review, we affirm the final agency decision.

## Background

In the 2010 State Medical Facilities Plan ("SMFP"), the North Carolina State Health Coordinating Counsel identified a need for three new operating rooms in Wake County. WakeMed, Rex, Duke University Health System, d/b/a Duke Raleigh Hospital ("Duke"), and HSSC filed separate applications seeking a certificate of need

("CON") to develop the operating rooms. The applications were reviewed by Michael J. McKillip ("Mr. McKillip"), a CON Section Project Analyst, who with his supervisor, Section Chief Craig R. Smith ("Mr. Smith"), prepared the CON Section's decision.

Although the 2010 SMFP identified a need for three operating rooms in Wake County, it did not specify the type of operating rooms that were needed, shared versus ambulatory. Shared operating rooms accommodate both inpatient and outpatient surgeries, while ambulatory operating rooms can accommodate only outpatient surgeries. 10A N.C.A.C 14C.2101(1), (11) (2012); N.C. Gen. Stat. § 131E-176(1b) (2011). WakeMed's CON application proposed the construction of three shared operating rooms at its WakeMed Cary facility. Duke's application proposed the addition of two shared operating rooms at Duke Raleigh Hospital. HSSC's application proposed the construction of an ambulatory surgery center with three ambulatory operating rooms in Holly Springs. Rex submitted two applications for the three operating rooms: one application proposed the construction of a shared operating room at Rex Hospital in Raleigh; the second application proposed the construction of two ambulatory operating rooms at Rex Healthcare of Holly Springs.

The CON Section reviewed the competing applications under the statutory review criteria provided in N.C. Gen. Stat. § 131E-183 and the regulations permitted by the statute, including 10A N.C.A.C. 14C.2100-.2106. The CON Section found the applications of WakeMed, Rex, and HSSC to be conforming to all review criteria, requiring an additional comparative analysis of these applications; Duke's application was found to be nonconforming to specific review criteria, and thus, unapprovable. As a result of the comparative analysis, the CON Section found HSSC's application to be superior. In a 28 July 2010 decision, the CON Section conditionally approved HSSC's CON application and denied the applications of WakeMed and Rex.

WakeMed, Rex, and Duke each filed petitions for contested case hearings, which were consolidated. HSSC was allowed to intervene in the contested cases filed by WakeMed and Rex, and WakeMed and Rex were allowed to intervene in the contested case filed by each other. Duke voluntarily dismissed its petition for a contested case before the consolidated hearing was held and is not a party to this appeal.

Following the contested case hearing, Administrative Law Judge Donald W. Overby ("ALJ Overby") issued a recommended decision recommending that the Agency reverse the approval of HSSC's appli-

cation and approve WakeMed's application. The Agency issued its final agency decision ("FAD") rejecting ALJ Overby's recommended decision and affirming the CON Section's conditional approval of HSSC's application. WakeMed and Rex appeal from the FAD. Additionally, WakeMed cross-appeals to respond to Rex's arguments that the Agency erred in concluding WakeMed's application was conforming to the statutory review criteria and, thus, was a candidate for approval.

## Discussion

Our review of the Agency's FAD in a CON determination is controlled by N.C. Gen. Stat. § 150B–51(b) (1999). *Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs.*, 205 N.C. App. 529, 534, 696 S.E.2d 187, 192 (2010), *disc. review denied*, ____ N.C. ____, 705 S.E.2d 739, and, ____ N.C. ____, 705 S.E.2d 753 (2011). Modification or reversal of the FAD requires that the Agency's findings, inferences, conclusions, or decisions be:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B–29(a), 150B–30, or 150B–31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B–51(b) (1999). The first four grounds under section 150B–51(b) require law-based inquiries, subject to *de novo* review; the last two grounds require fact-based inquiries, such as determining whether sufficient evidence supports the Agency's decision, and invoke application of the whole-record test. *Parkway Urology*, 205 N.C. App. at 535, 696 S.E. 2d at 192. Under the whole-record test, we must determine whether the Agency's decision is supported by substantial evidence—relevant evidence that a reasonable mind could conclude supports a decision. *Id.* Significantly, we may not substitute our judgment for that of the Agency's regardless of whether the record contains evidence that could support a conclusion different than that reached by the Agency. *Id.*

## I. Amendment of Applications

[1] Initially, we address Rex's argument that the Agency erred by failing to conclude that HSSC's CON application could not be approved, because, Rex contends, HSSC impermissibly amended its application after it was submitted to the CON Section. We disagree.

Rex is correct in arguing that a CON applicant may not amend its application after it has been filed and deemed complete. *Presbyterian-Orthopaedic Hosp. v. N.C. Dep't of Human Res.*, 122 N.C. App. 529, 537, 470 S.E.2d 831, 836 (1996); 10A N.C.A.C. 14C.0204. Here, the CON Section deemed HSSC's application complete on 16 February 2010. HSSC omitted Sections III.3—III.9 and a letter of support from Triangle Orthopedic Associates ("TOA") from its application. HSSC filed the missing application sections and the missing letter of support on 19 April 2010 during the responsive comment period of the application process. Rex contends the CON Section impermissibly relied upon the amended application in awarding the certificate of need.

Rex cites an unpublished opinion of this Court to contend that the test for whether a CON application has been amended is whether the Agency "considered" the information added to the application after the application had been filed. Yet, unpublished opinions of this Court do not constitute controlling legal authority. N.C. R. App. P. 30(e)(3) (2012). We conclude the proper standard for determining whether a CON application was impermissibly amended was the standard utilized by this Court in *Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 537, 470 S.E.2d at 836. In that case the CON applicant amended its application when it decided to change the management company it intended to use to oversee its operations at the facility it proposed in its application. This Court concluded the substitution of the management company was a "material amendment to its application" because *"all of [the applicant's] logistical and financial data in its completed certificate of need application was based"* on utilizing the original management company. *Id.* (emphasis added).

Here, HSSC did not make a material amendment to its CON application. The TOA letter of support submitted by HSSC in responsive comments was referenced in the application when the application was originally submitted to the CON Section; that the TOA surgeons had submitted a letter expressing their support for HSSC's proposed facility was one of the representations made in the application. The signatories to the TOA letter were identical to the TOA surgeons iden-

tified by name in HSSC's application. Thus, providing the substance of the TOA letter did not amount to a "material change" to the representations made in HSSC's application.

As for Sections III.3 - III.9, the Agency found that these missing materials were not necessary to evaluate HSSC's application conformity because the answers for the questions in these sections were found elsewhere in the application. Additionally, Mr. McKillip and Mr. Smith testified that their approval of HSSC's application was not based on the materials HSSC filed after the application was deemed complete. Thus, we conclude the Agency did not err in determining that HSSC did not impermissibly amend its CON application, and Rex's argument is overruled.

## II. Criterion 3

[2] WakeMed and Rex make multiple arguments as to why they believe the HSSC application did not conform to several of the statutory review criteria. An applicant for a certificate of need must comply with all review criteria provided in N.C. Gen. Stat. § 131E-183(a). *Presbyterian-Orthopaedic Hosp.*, 122 N.C. App. at 534, 470 S.E.2d at 834. First, WakeMed contends that the Agency erred as a matter of law by not concluding that the CON Section failed to adhere to its statutory obligation under N.C. Gen. Stat. § 131E-183(a)(3) ("Criterion 3") to determine the type of operating rooms, shared versus ambulatory, that would best meet the needs of Wake County identified in the 2010 SMFP. We disagree.

WakeMed cites no legal authority other than Criterion 3 in arguing that the CON Section must determine the type of operating rooms needed. Criterion 3 states:

*The applicant* shall identify the population to be served by the proposed project, and shall demonstrate the need that this population has for the services proposed, and the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed.

N.C. Gen. Stat. § 131E-183(a)(3) (2011) (emphasis added). We conclude nothing in Criterion 3 requires the CON Section to determine whether shared or ambulatory operating rooms were required to meet the need identified in the SMFP. Additionally, the Agency's regulations promulgated under N.C. Gen. Stat. § 131E-183(b) for the

review of CON applications specifically related to operating room facilities, N.C.A.C. 14C.2101–.2106, do not contemplate that the Agency must make a determination as to whether one type of operating room is needed to the exclusion of the other. Rather, these regulations require the applicant to demonstrate the need for its proposed services based on the applicant's projected utilization rates of its proposed facilities. *See* 10A N.C.A.C. 14C.2102(b)(4) (2012) (requiring CON applicants to provide projected inpatient and outpatient cases to be performed in each of the first three years of operation of the proposed facility); 10A N.C.A.C. 14C.2103(b) (providing a formula by which a proposal for new operating rooms shall demonstrate "the need" for the proposed facility). Thus, we conclude there is no legal requirement that the CON Section determine whether shared versus ambulatory operating rooms were required to meet the needs of the target population identified in the SMFP.

Second, WakeMed contends the CON Section applied the wrong standard under Criterion 3 by evaluating whether the applicants demonstrated their business need for the proposed facility rather than whether the applicant demonstrated that "the population to be served[,]" N.C. Gen. Stat. § 131E-183(a)(3), had a need for the services proposed. WakeMed appears to base this argument on one line in Craig Smith's testimony, which we conclude it takes out of context. A review of the transcript reveals that in response to questioning by WakeMed, Mr. Smith testified to the proper standard that is to be applied under Criterion 3 during the application review process:

[Counsel]: Mr. Smith, looking at Criterion (3) . . . it requires the applicant to demonstrate what patients need and not what the institution or the provider needs; is that right?

[Mr. Smith]: That's correct.

Thus, our review of the record reveals that the CON Section applied the proper standard under Criterion 3, and WakeMed's arguments are without merit.

Petitioners also argue there is insufficient evidence to support the conclusion that the HSSC application complied with Criterion 3. These arguments assert that: HSSC did not demonstrate that there is a need for ambulatory operating rooms in its proposed service area, or that there is a lack of geographic access to ambulatory surgery services in HSSC's proposed service area; and that HSSC's Medicaid and Charity Care Projections are not credible. Petitioners further contend that because HSSC failed to conform to Criterion 3, the application

also failed to conform to Criteria 1, 4, 5, 6, 13c, and 18a, rendering the HSSC application unapprovable by the CON Section. We disagree.

Criterion 3 requires the CON application to (1) "identify the population to be served by the proposed project," and (2) "demonstrate the need that this population has for the services proposed[.]" N.C. Gen. Stat. § 131E-183(a)(3). Although petitioners argue the Agency erred as a matter of law in approving HSSC's application, the argument is one of sufficiency of the evidence—that the Agency's decision lacked a proper evidentiary basis. Accordingly, we apply the whole-record test to determine if the record contains substantial evidence to support the FAD. *See Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Human Servs.*, 176 N.C. App. 46, 52-53, 625 S.E.2d 837, 841-42 (2006) (applying the whole-record test to review the Agency's decision that a CON application was in compliance with N.C. Gen. Stat. § 131E–183(a)(3)).

### A. Utilization Projections

Petitioners first argue that the Agency erred in concluding that HSSC's application conformed to the review criteria because substantial evidence reveals HSSC failed to demonstrate that its "utilization projections" for the proposed facility were reasonable. Because, according to petitioners, the projected utilization rate was not reasonable, HSSC failed to demonstrate the target population's need for its proposed surgical facility, as required by Criterion 3.

HSSC's utilization projections for the proposed facility were calculated based on "use rate" and "market share" projections for the area in which the proposed facility would be located. HSSC selected a "primary service area" (the source of 90% of its total projected patients) comprised of six census tracts in southern Wake County and multiplied the projected population in the service area by the expected "use rate" (rate of surgical procedures per 1,000 people). HSSC calculated its projected "market share" within each of the six census tracks that comprised its projected service area. HSSC then estimated an additional volume of procedures to be provided to patients coming from outside its primary service area but who resided in Wake County (a total of 10% of its projected patients).

### (1) Use Rate Projection

HSSC calculated its "use rate" utilizing a three-year historical average of ambulatory surgery cases performed county-wide divided by Wake County's population. Petitioners argue HSSC's assumptions

were unreasonable because they were dependent on HSSC providing *all types* of surgical specialties at the proposed facility. Petitioners insist that HSSC could not demonstrate that it would be able to provide all surgical specialties due to a lack of demonstrated support from physicians indicating their willingness to operate in the proposed facility. However, a review of the record reveals there is substantial evidence to support the Agency's approval of the CON Section's decision that HSSC's utilization and market share projections were reasonable.

While HSSC only submitted letters of support for a limited number of surgical specialties, Rex's expert witness Daniel Carter, Jr., conceded that he did not believe support letters were necessary for every type of surgical procedure an applicant intends to offer. Mr. Smith testified that a county-wide use rate such as HSSC's could be reasonable even where the applicant intended to offer only a limited set of surgical procedures and that HSSC's top-20 proposed procedures included the most common types of surgeries performed in an ambulatory surgical facility in Wake County and at a national level. Additionally, HSSC's proposed facility is a "multispecialty facility" that would be open to all surgical specialties; HSSC planned to allow surgeons of all specialties to operate at the facility. HSSC's application stated that the company would engage in discussions with surgical specialties other than those for which it already held letters of support. Ultimately, Mr. Smith and Mr. McKillip testified that the CON Section was satisfied that HSSC's utilization projections were reasonable.

## (2) Market Share Projection

Petitioners additionally contend that HSSC projected an unreasonable market share for a new healthcare facility. HSSC projected a 60% market share in the Holly Springs census tract (the highest estimation for all of the six census tracts comprising HSSC's proposed primary service area) after three years of operation but only a total market share of 5% in all of Wake County. Petitioners contend this market share projection is unreasonable because it assumes HSSC will obtain market share for all types of surgical specialties. Yet, petitioners contend that HSSC will only offer surgeries from a limited set of surgical specialties. This argument that HSSC failed to demonstrate that it would provide a multispecialty facility, however, has been shown to be without merit, as discussed above.

Petitioners also contend HSSC's market share projections are unreasonable because the aggregate projection from all six census tracts in HSSC's proposed primary service area is higher than the market share projection the Agency rejected in its review of Novant's 2008 Holly Springs Hospital CON application. However, the record reveals that the Agency rejected the 2008 market share projections, in part, because Novant provided no support letters from Wake County surgeons or any doctors in southern Wake County. Here, HSSC's proposed facility is an ambulatory surgery center, not a hospital. Additionally, HSSC provided support letters from Wake County surgeons, physicians in southern Wake County, as well as from Durham and Orange County surgeons. Furthermore, Mr. McKillip testified that it was not appropriate to compare the HSSC application and Novant's 2008 application because they were so different in nature.

Additional evidence supporting the Agency's decision that HSSC's market share projection was reasonable includes the testimony of Craig Smith that the CON Section considered the high growth rate of the Holly Springs area in which HSSC's proposed facility would be located. Novant's Vice President of Ambulatory Care also testified that two Novant facilities had attained a 60% market share by their third year of operation.

### (3) Geographic Access

After determining that the applications submitted by WakeMed, Rex, and HSSC conformed to the statutory review criteria, the CON Section compared each application to the others using the six comparative factors described above, including the geographic accessibility of the proposed facility to the target population. *See* N.C. Gen. Stat. § 131E-183(a)(3) (requiring the CON applicant to demonstrate "the extent to which all residents of the area, and, in particular, low income persons, racial and ethnic minorities, women, handicapped persons, the elderly, and other underserved groups are likely to have access to the services proposed"). WakeMed argues that the conclusion by the Agency that residents of southern Wake County—HSSC's proposed service area—lack geographic access to surgery services and that HSSC's application was comparatively superior with respect to geographic access is unsupported by substantial evidence. However, the record shows that the primary service area proposed by HSSC is home to 12% of Wake County's population and that not one of the County's 90-plus operating rooms is located in this area. Indeed, Rex's expert witness, Mr. Carter, and HSSC's expert witness, Nancy Bres Martin, testified that geographic access to health care

services is a significant objective in CON law. *See* N.C. Gen. Stat. § 131E-175(3) ("[I]f left to the market place to allocate health service facilities and health care services, geographical maldistribution of these facilities and services would occur[.]"). Thus, despite, WakeMed's argument to the contrary, there is substantial evidence to support the Agency's conclusion that HSSC's application was comparatively superior in regards to the comparative factor of geographic access.

### (4) Charity Care

WakeMed argues that the Agency erred in rejecting ALJ Overby's conclusion that HSSC's statements regarding its charity care policy and service to Medicaid patients were not credible. We disagree.

Specifically, WakeMed contends that the ALJ was correct in his assessment that the testimony provided by Novant's Manager of Business Planning, Robert Johnson, Jr., was too contradictory and unfounded to be believed. WakeMed further contends it is the purview of the ALJ to determine the credibility of witnesses and that determination cannot be set aside absent clear and convincing evidence that the ALJ erred. However, our caselaw is clear that "although an ALJ makes a [r]ecommended [d]ecision, it is for the agency to decide the credibility of witnesses and conflicts in the evidence." *Blalock v. N.C. Dep't of Health & Human Servs.*, 143 N.C. App. 470, 475, 546 S.E.2d 177, 181-82 (2001) (applying the whole-record test to affirm the agency's rejection of the ALJ's recommended decision where "the agency's final decision provided substantial reasons, including the credibility of witnesses, for rejecting the ALJ's [r]ecommended [d]ecision"); *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 672, 599 S.E.2d 888, 902 (2004) ("It is well settled that 'it is for the administrative body, in an adjudicatory proceeding, to determine the weight and sufficiency of the evidence and the credibility of the witnesses . . . .' " (quoting *State ex rel. Utils. Comm'n v. Duke Power Co.*, 305 N.C. 1, 21, 287 S.E.2d 786, 798 (1982)). Despite ALJ Overby's conclusions that Mr. Johnson's testimony was not credible, the Agency complied with its statutory duty by providing specific reasons, based on the evidence in the record, for rejecting the ALJ's findings. N.C. Gen. Stat. § 150B-34(c) (2009)[1] ("For each finding of fact in the recommended decision not adopted by the agency, the agency shall state the specific reason, based on

---

1. Repealed by 2011 N.C. Sess. Laws ch. 398, § 18 (effective Jan. 1, 2012) (applying to contested cases commenced on or after that date).

the evidence, for not adopting the findings of fact . . . ."); *see Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 171 N.C. App. 734, 739, 615 S.E.2d 81, 84 (2005) (citing N.C. Gen. Stat. § 150B-34(c) and affirming the FAD in a CON proceeding where the agency rejected findings of fact in the ALJ's recommended decision, but "stated a specific reason why each was rejected"). Over twelve pages of its FAD, the Agency contradicted and rejected the findings of the recommended decisions concerning Mr. Johnson's testimony and concluded that his testimony was consistent in all material respects and was not contradicted by competent evidence. Accordingly, we overrule WakeMed's argument that the Agency erred in rejecting ALJ Overby's credibility determination as to testimony regarding HSSC's Medicaid and charity care projections. For the reasons stated above, we reject petitioners' contention that the Agency erred in concluding that HSSC's application complied with all the requirements of Criterion 3.

**B. Conformity with Criterion 5**

Rex also argues the Agency erred in rejecting ALJ Overby's conclusion that HSSC's application was nonconforming with N.C. Gen. Stat. § 131E-183(a)(5) ("Criterion 5"). We disagree.

Criterion 5 provides that:

> Financial and operational projections for the project shall demonstrate the availability of funds for capital and operating needs as well as the immediate and long-term financial feasibility of the proposal, based upon *reasonable projections* of the costs of and charges for providing health services by the person proposing the service.

N.C. Gen. Stat. § 131E-183(a)(5) (2011) (emphasis added). That is, the applicant must demonstrate the proposed facility is financially feasible, based on reasonable projections of the facility's costs and charges. The Agency noted that the CON Section considered the applicant's assumptions, its projected revenue based on the proposed payor mix, and the projected expenses to determine conformity with Criterion 5.

Rex first argues that HSSC's application was nonconforming with Criterion 5 because it was nonconforming with Criterion 3, which is an estimate of HSSC's use rate and market share. As we concluded above, the Agency's decision that HSSC's application was conforming

with Criterion 3 is supported by substantial evidence, therefore this argument is without merit.

Rex further argues that the evidence "undisputedly established" that there was no explanation for how HSSC's costs, its charges, or its payor mix were derived, and thus there was no reasonable basis for concluding HSSC's application was in compliance with Criterion 5. The "payor mix" is a categorization of the applicant's projected payors, e.g., private insurance, Medicare, Medicaid, charity, etc. Robert Johnson, Jr., developed HSSC's financial projections. Because HSSC does not have a history of providing surgical services in Wake County, Mr. Johnson based his projections on other facilities that are owned by its parent, Novant. Mr. Johnson testified that he used historical data from Novant's Presbyterian Surgery Center Ballantyne as a starting point for his projections because he concluded it was the most similar Novant surgery center to the proposed HSSC center—a multi-discipline surgical center. Mr. Johnson determined the gross patient revenue for its application by dividing the total gross revenue per year from the Ballantyne facility by the total number of estimated procedures at that facility per year to arrive at an average gross charge per patient. These estimates were then adjusted for inflation. Mr. Johnson also testified that he calculated revenue, income, and expenses in a similar manner.

As respondents note, neither the statutory criterion nor the regulations require a particular method of projecting finances and payor mix beyond requiring that they be "reasonable." *See* N.C. Gen. Stat. § 131E-183(a)(5). Rex's expert witness, Mr. Carter, conceded that reasonableness is the only requirement an applicant must meet. As noted above, it is within the purview of the Agency, not the ALJ, to determine the credibility of witnesses and resolve conflicts in the evidence. *Blalock*, 143 N.C. App. at 475, 546 S.E.2d at 181-82. In doing so, the Agency is required to provide specific reasons for rejecting the ALJ's findings. N.C. Gen. Stat. § 150B-34(c) (2009). Contrary to Rex's assertion that the Agency ignored ALJ Overby's findings that conclude Mr. Johnson's testimony was not credible, the Agency provided an extensive explanation for why it disagreed and rejected those findings from the recommended decision. Additionally, we conclude the Agency's decision that HSSC's application conformed to Criterion 5 is supported by substantial evidence and we overrule respondents' argument to the contrary.

## C. Conformity to Other Statutory Review Criteria

Respondents next contend that the Agency erred in concluding that HSSC's CON application was conforming to the additional statutory criteria N.C. Gen. Stat. § 131E-183(a)(1), (4), (6), (13)c, and (18a). We disagree.

N.C. Gen. Stat. § 131E-183(a)(13)c (2009) ("Criterion 13c") requires the applicant to demonstrate "[t]hat the elderly and medically underserved groups identified [in the statute] will be served by the applicant's proposed services and the extent to which each of these groups is expected to utilize the proposed services[.]" To comply with Criterion 13c, the CON application requires the applicant to provide an estimate of its payor mix. Rex contends that HSSC's projection of the percentage of Medicaid patients that comprise its payor mix is unreasonable because Holly Springs is located in an affluent part of Wake County with significantly fewer residents with incomes below $25,000 compared to the Wake County average; this results in a lower percentage of potential Medicaid patients than HSSC estimated it would serve in its payor mix. However, the Agency addressed this concern noting that Fuquay-Varina is in HSSC's proposed primary service area and it has one of the highest rates of poverty in Wake County. CON Section Chief, Craig Smith, testified that in light of these demographics, HSSC's projected payor mix was reasonable. Indeed, Clarence A. Roberts, Jr., a WakeMed employee responsible for CON application preparation and analysis, conceded that he believed the Agency was correct in concluding HSSC's application was compliant with Criterion 13c. Thus, there is substantial evidence in the record to support the Agency's decision that HSSC's application was conforming to Criterion 13c.

Respondents argue the Agency erred in concluding that HSSC's application was conforming to N.C. Gen. Stat. § 131E-183(a)(1) ("Criterion 1") because the application failed to sufficiently address the three basic principles governing the SMFP ("Policy GEN-3"): promoting cost effective approaches, expanding health care to the medically underserved, and encouraging quality healthcare services. HSSC's direct responses to the questions on Policy GEN-3 were omitted from its application when the application was submitted. However, in the FAD the Agency noted that Mr. Smith and Mr. McKillip testified that it was customary during the CON application review to review all portions of an application to find information relevant to the review criteria; WakeMed's witness Daniel J. Sullivan

conceded the CON Section is permitted to do so. As the Agency noted, the CON Section found information addressing Policy GEN-3 in other sections of HSSC's application. Our review of the record reveals that substantial evidence supports the Agency's conclusion that HSSC's application was conforming to Criterion 1.

. Respondents argue that the Agency erred in concluding HSSC's application was conforming with N.C. Gen. Stat. § 131E-183(a)(4) ("Criterion 4"), which requires the application to demonstrate "the least costly or most effective alternative has been proposed" for meeting the SMFP's proposed need. Respondents argue that because HSSC's application was not conforming with Criterion 3, it could not be conforming with Criterion 4 as the two are interdependent. Because we conclude that the Agency's decision that the application was conforming with Criterion 3 is supported by substantial evidence, this argument is without merit to the extent it relies on non-compliance with Criterion 3. Additionally, respondents contend that information regarding Criterion 4 was missing from HSSC's application and, thus, the application was nonconforming. However, as noted in the FAD, Craig Smith testified that the CON Section found sufficient information relevant to Criterion 4 in other portions of HSSC's application. Therefore, the Agency's decision regarding HSSC's compliance with Criterion 4 is supported by substantial evidence.

Respondents contend the Agency erred in concluding HSSC's application was conforming to N.C. Gen. Stat. § 131E-183(a)(6) ("Criterion 6"), which requires an applicant to demonstrate "the proposed project will not result in unnecessary duplication of existing or approved health service capabilities or facilities." Because we conclude that the Agency's decision that the application was conforming with Criterion 3 is supported by substantial evidence, respondent's argument that the application was nonconforming to Criterion 6 because it is nonconforming to Criterion 3 is without merit. Respondents further contend that HSSC simply failed to demonstrate that its proposed operating rooms were not an unnecessary duplication of existing facilities. This argument ignores the Agency's detailed findings in the FAD as to HSSC's compliance with Criterion 6, which we conclude are supported by substantial evidence including that HSSC proposed the only operating rooms in one of the fastest-growing areas of Wake County. Respondents' arguments are overruled.

Finally, respondents contend the Agency erred in concluding HSSC's application was conforming to N.C. Gen. Stat. § 131E-183(a)(18a) ("Criterion 18a"). This argument is without merit as it relies solely on

respondents' contention that HSSC's application was non-conforming to Criterion 3, an argument we have overruled.

### III. Comparative Analysis

[3] WakeMed contends that the Agency's comparative analysis was flawed in that it failed to properly consider the statutory criteria relating to need of and access to health care services by underserved groups as required by N.C. Gen. Stat. § 131E-183(a)(3), (6), (13), and (18a). We disagree.

The comparative analysis performed by the CON Section is a matter within its discretion, and "[t]here is no statute or rule which requires the [CON Section] to utilize certain comparative factors." *Craven*, 176 N.C. App. at 58, 625 S.E.2d at 845. We review the Agency's decision under the whole-record test to determine where there is substantial evidence in the record to support the Agency's decision. *Id.* at 59, 625 S.E.2d at 845. In doing so, "[i]t would be improper for this Court to substitute our judgment for the Agency's decision[.]" *Id.*

As discussed above, there is substantial evidence in the record to support the Agency's decision that: (1) HSSC proposed placing a facility in southern Wake County where there are currently no operating facilities; (2) HSSC proposed lower gross and net revenues and lower operating expense than the only other applicant that proposed ambulatory operating rooms; (3) HSSC projected the highest Medicaid percentage and third-highest Medicare percentage demonstrating it was superior for access by underserved groups; and (4) HSSC was found to be conforming to all review criteria. Our review of the record leads us to conclude there is substantial evidence to support the conclusion in the FAD that the CON Section properly approved HSSC's application. That petitioners, or this Court, could find evidence in the record to support a different conclusion is irrelevant as, absent an error of law, we cannot substitute our judgment for that of the reviewing agency. *See Parkway Urology*, 205 N.C. App. at 535, 696 S.E.2d at 192.

Because we conclude HSSC's application was properly approved, we need not reach petitioners' additional arguments: that WakeMed impermissibly amended its application after it had been filed with the CON Section; that WakeMed's or Rex's applications were nonconforming with several of the statutory review criteria; or that Rex's application was comparatively superior to all other applications.

## Conclusion

In summary, we conclude the Agency did not err in rejecting the recommended decision of ALJ Overby. We affirm the Agency's final agency decision.

AFFIRMED.

Judges GEER and BEASLEY concur.