# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

## RALEIGH

CAROMONT HEALTH, INC., GASTON MEMORIAL HOSPITAL, INC. AND CAROMONT AMBULATORY SERVICES, LLC D/B/A CAROMONT ENDOSCOPY CENTER, PETITIONERS
v.
NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES DIVISION OF HEALTH SERVICE REGULATION, CERTIFICATE OF NEED SECTION, RESPONDENT AND GREATER GASTON CENTER LLC, RESPONDENT-INTERVENOR

No. COA12-1044

Filed 3 December 2013

**Hospitals and Other Medical Facilities—certificate of need— failure to show substantial prejudice**

The North Carolina Department of Health and Human Services Certificate of Need Section ("Agency") did not err by dismissing petitioners' petition under N.C.G.S. § 1A-1, Rule 41(b). The Agency properly concluded that petitioner failed to prove that it suffered substantial prejudice from the granting of a certificate of need to respondent intervenor for development of two gastrointestinal endoscopy rooms.

Appeal by petitioners from final agency decision entered 22 March 2012 by the North Carolina Department of Health and Human Services, Division of Health Service Regulation. Heard in the Court of Appeals 13 February 2013.

*Bode, Call & Stroupe, L.L.P., by S. Todd Hemphill and Matthew A. Fisher, for petitioners-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General June S. Ferrell, for respondent-appellee.*

1

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

*Smith Moore Leatherwood LLP, by Maureen Demarest Murray and Carrie A. Hanger, for respondent-intervenor-appellee.*

GEER, Judge.

Petitioners CaroMont Health, Inc., Gaston Memorial Hospital, Inc., and CaroMont Ambulatory Services, LLC, d/b/a CaroMont Endoscopy Center (collectively "CaroMont") appeal from the final agency decision of the N.C. Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section ("the Agency"), dismissing their petition under Rule 41(b) of the Rules of Civil Procedure. We hold that the Agency properly concluded that CaroMont failed to prove that it suffered substantial prejudice from the granting of a certificate of need to Greater Gaston Center LLC ("GGC") for development of two gastrointestinal endoscopy rooms. We, therefore, affirm.

## Facts

Our legislature has specifically found "[t]hat demand for gastrointestinal endoscopy services is increasing at a substantially faster rate than the general population given the procedure is recognized as a highly effective means to diagnose and prevent cancer." N.C. Gen. Stat. § 131E-175(12) (2011). For that reason, although "persons proposing to obtain a license to establish an ambulatory surgical facility for the provision of gastrointestinal endoscopy procedures" must obtain a certificate of need ("CON"), the legislature has provided that "[t]he annual State Medical Facilities Plan shall not include policies or need determinations that limit the number of gastrointestinal endoscopy rooms that may be approved." N.C. Gen. Stat. § 131E-178(a)(4) (2011).

In addition, a physician may open a gastrointestinal ("GI") endoscopy room in his or her office at any time without a CON or a license. However, only certain payors will reimburse providers for procedures performed in unlicensed GI endoscopy rooms located in physicians' offices. For example, Medicaid and, in certain circumstances, Medicare will not provide reimbursement for such procedures.

As of 2011, petitioner Gaston Memorial Hospital, an acute care hospital in Gastonia, was the only licensed provider of GI endoscopy rooms in Gaston County, North Carolina. It operated eight GI endoscopy rooms. Petitioner CaroMont Health is the parent corporation of Gaston Memorial Hospital and petitioner CaroMont Ambulatory Services, LLC, d/b/a CaroMont Endoscopy Center ("CAS"). In 2007, because petitioners perceived a need for a freestanding ambulatory surgery center, CaroMont

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

Health and CAS applied for a CON authorizing CaroMont to move two of the eight licensed GI endoscopy rooms from Gaston Memorial Hospital to a freestanding GI clinic to be called CaroMont Endoscopy Center. Although petitioners were granted the CON on 23 December 2008, the CaroMont Endoscopy Center was still only in development and not yet operational by 2011.

GGC was started by Physicians Endoscopy, LLC, a national endoscopy center development and management company, and five Gaston County gastroenterologists with independent practices who have practiced in Gaston County for a number of years, including Dr. Samuel Drake, Dr. Khaled Elraie, Dr. Nelson Forbes, Dr. Austin Osemeka, and Dr. William Watkins. On or about 15 October 2010, GGC filed an application for a CON to develop a freestanding ambulatory surgery center with two GI endoscopy procedure rooms in Gaston County. The Agency conditionally approved GGC's application on 30 March 2011.

CaroMont filed a petition for a contested case hearing on 29 April 2011, challenging the approval of GGC's CON application. GGC intervened by consent on 16 May 2011. Administrative Law Judge Joe L. Webster held a three-day contested case hearing. At the close of CaroMont's evidence, the Agency and GGC moved for dismissal of CaroMont's petition pursuant to Rule 41(b) of the Rules of Civil Procedure.

Judge Webster issued a recommended decision on 19 January 2012 dismissing CaroMont's petition on the basis that CaroMont had failed to demonstrate, as required by N.C. Gen. Stat. § 150B-23(a) (2011), either that its rights were "substantially prejudiced" by the Agency's decision or that the Agency committed error. CaroMont then submitted written exceptions to Judge Webster's recommended decision to the Agency. On 22 March 2012, Mr. Drexel Pratt, Director of the Department of Health and Human Services' Division of Health Service Regulation, issued the final agency decision adopting Judge Webster's decision as the final decision of the Agency. CaroMont timely appealed to this Court.

## Discussion

In reviewing a CON determination:

> "[m]odification or reversal of the Agency decision is controlled by the grounds enumerated in [N.C. Gen. Stat. §] 150B–51(b); the decision, findings, or conclusions must be:
>
> > (1) In violation of constitutional provisions;

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

  (2)   In excess of the statutory authority or jurisdiction of the agency;

  (3)   Made upon unlawful procedure;

  (4)   Affected by other error of law;

  (5)   Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§] 150B–29(a), 150B–30, or 150B–31 in view of the entire record as submitted; or

  (6)   Arbitrary and capricious."

*Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs.*, 205 N.C. App. 529, 534, 696 S.E.2d 187, 192 (2010) (quoting *Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 171 N.C. App. 734, 739, 615 S.E.2d 81, 84 (2005)), *disc. review denied*, 365 N.C. 78, 705 S.E.2d 739, 753 (2011).

  " 'The first four grounds for reversing or modifying an agency's decision . . . are law-based inquiries' " that we review de novo. *Id.* at 535, 696 S.E.2d at 192 (quoting *N.C. Dep't of Revenue v. Bill Davis Racing*, 201 N.C. App. 35, 42, 684 S.E.2d 914, 920 (2009)). The final two grounds, however, " 'involve fact-based inquiries' " that " 'are reviewed under the whole-record test.' " *Id.* (quoting *N.C. Dep't of Revenue*, 201 N.C. App. at 42, 684 S.E.2d at 920). Under the "whole record" test, " 'the reviewing court is required to examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence[, with s]ubstantial evidence [consisting of] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Dialysis Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 137 N.C. App. 638, 646, 529 S.E.2d 257, 261, *aff'd per curiam*, 353 N.C. 258, 538 S.E.2d 566 (2000)).

  The final agency decision dismissing CaroMont's contested case petition first concluded that CaroMont failed to meet its burden of proving that it was substantially prejudiced by the Agency's approval of GGC's CON application. CaroMont initially argues, however, that the Agency erred in requiring it to show that it was substantially prejudiced. It contends that it met its burden simply by showing that it was an "affected person" under N.C. Gen. Stat. § 131E-188(a) (2011).

  This Court, however, specifically held in *Parkway Urology* that N.C. Gen. Stat. § 131E-188 and its requirement that a petitioner be an affected person "provides only the statutory grounds for and prerequisites to filing a petition for a contested case hearing regarding CONs."

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

205 N.C. App. at 536, 696 S.E.2d at 193. The Court pointed out that "in order for a petitioner to be entitled to relief," it must comply with N.C. Gen. Stat. § 150B-23(a), which requires that the petitioner allege that an agency has " 'ordered the petitioner to pay a fine or civil penalty, or *has otherwise substantially prejudiced the petitioner's rights.*' " 205 N.C. App. at 536, 696 S.E.2d at 193 (quoting N.C. Gen. Stat. § 150B-23(a) (2009)). The administrative law judge must, therefore, " 'determine *whether the petitioner has met its burden in showing that the agency substantially prejudiced petitioner's rights,*' " as well as whether " 'the agency also acted outside its authority, acted erroneously, acted arbitrarily and capriciously, used improper procedure, or failed to act as required by law or rule.' " *Id.* (quoting *Britthaven, Inc. v. N.C. Dep't of Human Res.*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459 (1995)). Consequently, the Court concluded, the appellant's "contention that it was unnecessary for it to show substantial prejudice to be entitled to relief is contrary to our case law and is without merit." *Id.* at 536-37, 696 S.E.2d at 193.

*Parkway Urology* is controlling. CaroMont was, therefore, required to prove that it was substantially prejudiced by the Agency's decision to grant GGC a CON. *See also Wake Radiology Servs. LLC v. N.C. Dep't of Health & Human Servs.*, 215 N.C. App. 393, 716 S.E.2d 87, 2011 WL 3891026, at *5, 2011 N.C. App. LEXIS 1924, at *14 (2011) (unpublished) ("In light of our decision in *Parkway Urology*, which we find to be controlling, we conclude that Wake's status as an 'affected person' pursuant to N.C. Gen. Stat. § 131E-188(c) in no way obviated the necessity for Wake to demonstrate that it was 'substantially prejudiced' by the Department's decision as required by N.C. Gen. Stat. § 150B-23(a)."), *disc. review denied*, 366 N.C. 229, 726 S.E.2d 838 (2012).

CaroMont next contends that it presented sufficient evidence of substantial prejudice. The question before this Court is whether the Agency's decision that CaroMont failed to prove substantial prejudice is supported by substantial evidence when considering the record as a whole or, phrased differently, whether the whole record contains relevant evidence that a reasonable mind might accept as adequate to support the Agency's conclusion that CaroMont failed to show substantial prejudice from the Agency's granting of the CON to GGC. *Parkway Urology*, 205 N.C. App. at 535, 696 S.E.2d at 192.

CaroMont argued to the Agency that it was substantially prejudiced by the approval of GGC's application for two reasons: (1) four of the five gastroenterologist members of GGC are on the medical staff of Gaston Memorial Hospital and will refer some of their patients to GGC instead

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

of Gaston Memorial Hospital or the CaroMont Endoscopy Center, and (2) Dr. Neville Forbes, who supported the CaroMont Endoscopy Center CON application when it was filed in October 2007, also supported and expressed his intention to perform procedures at GGC. On appeal, CaroMont argues that it was substantially prejudiced because "if the GGC Application is approved, the cases they now perform at [Gaston Memorial Hospital] and had projected to perform at [the CaroMont Endoscopy Center] *will shift* to GGC. . . . CaroMont's evidence shows that *based on the GGC Application's projections*, CaroMont will be significantly financially harmed if the Agency's approval of the GGC Application is upheld."

The Agency, however, concluded with respect to this argument:

30. The evidence demonstrated that CaroMont's primary concern is the normal effects of competition. CaroMont complained of the anticipated shift of GI endoscopy cases from Gaston Memorial Hospital and not yet operational CaroMont Endoscopy Center to the freestanding GI endoscopy facility proposed in the GGC Application. The allegations of harm resulting from this shift were no more than the normal effects of competition when physicians or patients may choose one facility over another.

. . . .

32. CaroMont's alleged loss of volume and revenue, even if considered to show other than the normal effects of competition, was speculative and not supported by a preponderance of the evidence because there was no evidence that such alleged loss of volume and revenue was reasonably certain to result from the Agency's decision to approve the GGC Application rather than other factors.

33. The fact that some physicians have chosen or may choose to perform procedures at the facility proposed by the GGC Application rather than a facility owned by CaroMont does not support or define any legal right that is substantially prejudiced by the Agency's decision to grant GGC a CON to construct a freestanding GI endoscopy center. "[Every one has the] right to enjoy the fruits and advantages of his own enterprise, industry, skill[,] and credit. He has no right to be protected against

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

competition." *Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647, 655 (1945).

34. CaroMont "is not being prevented from [benefitting from] 'the fruits and advantages of [its] own enterprise, industry, skill[,] and credit,' but [is] merely being required to compete for such benefit." *Bio-Medical Applications v. N.C. Dep't of Health and Human Servs.*, 179 N.C. App. 4[8]3, 491-92, 634 S.E.2d 572, 578 (2006) (quoting Coleman, 255 N.C. at 506, 35 S.E.2d at 665[])[.]

35. None of the CON Act's findings of fact in N.C. Gen. Stat. § 131E-175 address the importance of protecting any entity's market share, and CaroMont cannot assert protection of its market share as grounds for determining that the CON Section's decision was erroneous or improper.

36. CaroMont provided no testimony or evidence that it has a "right" to treat patients or receive revenue from patients who have yet to be scheduled for a GI endoscopy procedure or yet to be determined to be in need of GI endoscopy services, and are not currently patients of CaroMont. CaroMont witnesses admitted that physicians have the right to practice medicine where they desire and patients have the right to be treated where they wish.

37. There is nothing in the CON Act that restricts a physician's ability to practice medicine where he or she wishes. Similarly, there is nothing in the CON Act that restricts a patient from choosing where to receive health care.

38. Because CaroMont failed to prove by a preponderance of the evidence that the Agency Decision conditionally approving the GGC Application substantially prejudiced CaroMont's rights in any way, CaroMont failed to prove an essential element of its prima facie case. For that reason alone, the relief requested by CaroMont should be denied and CaroMont's case is subject to dismissal without regard to whether it proved Agency error. *See* N.C. Gen. Stat. § 150B-23; *Parkway Urology, P.A. v. N.C. Dep't of Health & Human Servs., supra;*

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

> *Presbyterian Hosp. v. N.C. Dep't of Health & Human Servs., supra; Bio-Medical Applications v. N.C. Dep't of Health & Human Servs., supra.*

CaroMont cites no authority suggesting the Agency erred in concluding that the alleged harm CaroMont might suffer from the opening of another GI endoscopy center is simply the result of normal competition. This Court held in *Parkway Urology* that harm from normal competition does not amount to substantial prejudice:

> [The non-applicant's] argument, in essence, would have us treat any increase in competition resulting from the award of a CON as inherently and substantially prejudicial to any pre-existing competing health service provider in the same geographic area. This argument would eviscerate the substantial prejudice requirement contained in N.C. Gen. Stat. § 150B–23(a). As previously noted, [the non-applicant] qualified as an affected person because it provided similar services to individuals residing within the service area of [the applicant's] proposed [linear accelerator ("LINAC")]. Obtaining the status of an affected person does not satisfy the *prima facie* requirement of a showing of substantial prejudice. *[The non-applicant] was required to provide specific evidence of harm resulting from the award of the CON to [the applicant] that went beyond any harm that necessarily resulted from additional LINAC competition in Area 20,* and NCDHHS concluded that it failed to do so. After a review of the whole record, we determine that NCDHHS properly denied [the non-applicant] relief due to its failure to establish substantial prejudice.

205 N.C. App. at 539, 696 S.E.2d at 195 (emphasis added).

Similarly, in *Novant Health, Inc. v. N.C. Dep't. of Health & Human Servs.,* 223 N.C. App. 362, 734 S.E.2d 138, 2012 WL 5397247, at *3, *4, 2012 N.C. App. LEXIS 1239, at *9, *10 (2012) (unpublished), *disc. review denied,* 366 N.C. 577, 738 S.E.2d 376, *and disc. review denied,* 366 N.C. 577, 738 S.E.2d 398 (2013),[1] this Court considered Novant's "substantial prejudice" argument that the policy allowing North Carolina Baptist Hospital, as an academic medical center teaching hospital, to develop

---

1. We recognize that an unpublished decision of a prior panel of this Court cannot bind a subsequent panel, *see State v. Pritchard,* 186 N.C. App. 128, 129, 649 S.E.2d 917, 918 (2007), and that Rule 30(e)(3) of the Rules of Appellate Procedure permits the citation to unpublished opinions in a party's brief on appeal only when that party "believes . . . there

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

an ambulatory surgical center when a non-academic hospital would not be granted approval gave the academic institution "an unfair competitive advantage." Relying on *Parkway Urology*, the Court held that even though Novant would "suffer harm in the market due to [North Carolina Baptist Hospital's] increased ability to provide health care services," a "mere competitive advantage [was] an insufficient basis upon which to argue prejudice." *Novant*, 2012 WL 5397247, at *4, 2012 N.C. App. LEXIS 1239, at *9. Because Novant had "failed to show that its harm [arose] above that posed by mere competition, . . . it [had] failed to demonstrate substantial prejudice." *Id.*, 2012 N.C. App. LEXIS 1239, at *9-10.

Here, it is undisputed that CaroMont was the only provider of GI endoscopy rooms in Gaston County prior to the granting of the CON to GGC. CaroMont's claim of harm arises solely out of the fact that competition would be increased by virtue of the authorization of two additional GI endoscopy rooms located in Gaston County. Patients and doctors in Gaston County would now have a choice between CaroMont's facilities and another separate facility also located in Gaston County.

As the Agency found, and CaroMont does not dispute, CaroMont's CONs for Gaston Memorial Hospital and for CaroMont Endoscopy Center do not guarantee that physicians will continue to "refer patients to the facility and [are] not a guarantee of any particular market share," especially given that the CON Act specifies that no limits shall be placed on the number of GI endoscopy rooms that can be developed in a given county. The Agency further found that "CaroMont offered no evidence that the approval of the GGC Application changed, in any way, Gaston Memorial Hospital and CaroMont Endoscopy Center's ability to take efforts to attract patients to their GI endoscopy procedure rooms. CaroMont is free to recruit new physicians, undertake marketing campaigns, change its staffing, improve its operations, or change its charge structure to seek to attract more physicians and patients to its endoscopy services and to seek to generate more procedure volume and revenue." In other words, GGC's CON requires CaroMont to compete for the endoscopy business to maintain the volumes and revenues it desires.

We see no meaningful distinction between CaroMont's arguments regarding substantial prejudice and the increased competition's impact

---

is no published opinion that would serve as well as the unpublished opinion." *State ex rel. Moore Cnty. Bd. of Educ. v. Pelletier*, 168 N.C. App. 218, 222, 606 S.E.2d 907, 909 (2005) (internal quotation marks omitted). As we find both *Wake Radiology* and *Novant* particularly relevant to consideration of the present case and both cases were properly submitted and discussed by the parties, we find the reasoning of those cases persuasive and adopt it here.

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

on pre-existing competing health service providers found insufficient in *Parkway Urology*, 205 N.C. App. at 539, 696 S.E.2d at 195, or the "unfair competitive advantage" in *Novant*, 2012 WL 5397247, at *3, 2012 N.C. App. LEXIS 1239, at *9. As the Agency concluded, CaroMont has not met the *Parkway Urology* requirement that it show "specific evidence of harm" going "beyond any harm that necessarily resulted from additional . . . competition" in Gaston County. 205 N.C. App. at 539, 696 S.E.2d at 195.

CaroMont, however, attempts to distinguish *Parkway Urology* on the basis that, in that case, the appellant "did not attempt to present any concrete evidence of a financial impact, but relied solely on its status as an affected person, and the fact that [the CON applicant's] second linear accelerator would compete with [the appellant's] existing ones." CaroMont contends that *Parkway Urology* establishes that "specific evidence of financial harm directly resulting from the award of a CON *is sufficient* to demonstrate substantial prejudice." CaroMont, however, does not reference any citation to *Parkway Urology* to support that contention.

Nothing in *Parkway Urology* suggests that simply quantifying the harm likely to arise out of additional competition resulting from the award of a CON is sufficient to show substantial prejudice — especially in the unique context of GI endoscopy rooms, which may not be limited in number in the State Medical Facilities Plan. Instead, *Parkway Urology* holds that the non-applicant must "provide specific evidence of harm resulting from the award of the CON . . . *that went beyond any harm that necessarily resulted from additional . . . competition*" in the relevant area. *Id.* (emphasis added). Here, although CaroMont presented evidence of specific harm, the harm resulted solely from the CON's introduction of additional competition.

Moreover, the Agency, in any event, determined both that CaroMont's evidence of harm was speculative and that CaroMont failed to show that the specific harm would be the result of the award of the CON. While CaroMont vigorously argues that the testimony of its expert witness, David Legarth, was uncontradicted and that "[n]o evidence was offered attacking the credibility or accuracy of this testimony," it has overlooked the fact that the final agency decision dismissed CaroMont's claims pursuant to Rule 41(b) of the Rules of Civil Procedure.

Rule 41(b) provides in relevant part: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

the ground that upon the facts and the law the plaintiff has shown no right to relief." This Court has explained that "[a] dismissal under Rule 41(b) should be granted if the plaintiff has shown no right to relief or if the plaintiff has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits." *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999).

In considering a motion under Rule 41(b), "the trial court is not to take the evidence in the light most favorable to plaintiff." *Hill*, 135 N.C. App. at 517, 520 S.E.2d at 800. Instead, " 'the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him.' " *Id.* (quoting *Dealers Specialties, Inc. v. Neighborhood Hous. Servs., Inc.*, 305 N.C. 633, 640, 291 S.E.2d 137, 141 (1982)). "The trial court must pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them." *Id.*

In short, even though Mr. Legarth's testimony was not contradicted, the Agency was entitled to determine the credibility of that evidence and the weight to which it was entitled, even in the absence of any opposing evidence. This Court may not overturn the Agency's credibility and weight determinations. *See, e.g., Wake Radiology*, 2011 WL 3891026, at *8, 2011 N.C. App. LEXIS 1924, at *21-22 (rejecting Wake Radiology's argument that its witness' testimony standing alone sufficed to establish " 'substantial prejudice' " because it was "tantamount to a request that we overturn a factual decision that is committed to the Department rather than the appellate courts").

The Agency recognized that Mr. Legarth projected that if physicians associated with GGC performed some of their outpatient endoscopy procedures at GGC's endoscopy center, then CaroMont would lose between $463,000.00 and $925,000.00 in net income per year. The Agency found, however, that "it is not reasonable to rely on Mr. Legarth's projections of loss of endoscopy volume and revenue by CaroMont as a result of the approval of the GGC Application."

More specifically, the Agency first noted that Mr. Legarth was a CON consultant and application preparer. It then found that "Mr. Legarth's testimony does not establish that CaroMont is substantially prejudiced by the CON Section's approval of the GGC Application for any one or more" of five reasons: "(1) CaroMont does not have any legal right to a certain level of volume or revenue; (2) Gaston County patients were seeking treatment at other facilities outside Gaston County and

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

CaroMont's endoscopy volume and revenue were declining before the CON Section's approval of the GGC Application; (3) the GGC physicians could shift endoscopy volume from CaroMont facilities to other existing facilities or to physician office based endoscopy rooms regardless of whether or not the CON Section approved the GGC Application; (4) the CON Section made a reasonable health planning judgment in determining that GGC's projections of sufficient volume for a total of ten endoscopy rooms in Gaston County were reasonable; and (5) Mr. Legarth could not predict with any reasonable degree of certainty that the projected losses would occur or would be proximately caused in the future as a direct result of the CON Section's approval of the GGC Application."

Regarding the first reason, CaroMont does not cite any authority that would give it a legal right to particular volumes and revenues. However, Mr. Legarth's testimony regarding CaroMont's harm – based on lost volume and revenues – assumes that CaroMont is entitled to the volume and revenue existing prior to the issuance of a CON to GGC.

With respect to the second reason, Mr. Legarth's testimony, in projecting losses due to GGC's CON, did not take into account the fact that CaroMont's volume and revenue were already declining prior to the GGC CON because Gaston County patients were seeking treatment outside of Gaston County. In connection with this reason, the Agency found that the CON Section had evidence supporting this patient loss in the form of GGC's application, CaroMont's own application for a CON for the CaroMont Endoscopy Center, and Gaston Memorial Hospital's renewal applications. In addition, both Mr. Legarth and CaroMont's vice president of clinical services acknowledged that the volume of GI endoscopy procedures at Gaston Memorial Hospital had declined before approval of the GGC application.

In addition, the Agency found and Mr. Legarth acknowledged that one doctor had, prior to the GGC application approval, shifted his caseload from Gaston Memorial Hospital to another hospital and that this shifted case load "closely tracked the reduction in the number of endoscopy procedures performed at Gaston Memorial Hospital during the same time period." The Agency then found: "To the extent that the decline in the volume of procedures at Gaston Memorial Hospital was the result of a shift of GI endoscopy patients from Gaston Memorial to other GI endoscopy providers outside Gaston County and the movement of physicians to performing procedures at other facilities, the preponderance of the evidence shows that this occurred before GGC's application was ever filed."

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

In other words, CaroMont and Mr. Legarth did not show harm due to the approval of the GGC Application because any shift of patients to other providers had already started to occur prior to the approval of the GGC application. These findings are supported by substantial evidence -- indeed, they are not seriously challenged by CaroMont on appeal.

Similarly, with respect to the third reason, although Mr. Legarth admitted that physicians are free to refer patients and perform procedures wherever they choose and move their practices wherever they desire, including into their own offices, he did not take that possibility into account in calculating the purported harm due to the GGC CON. Even in the absence of the GGC CON, CaroMont could lose volume and revenues in the future because of physicians shifting their practices and procedures. On appeal, CaroMont only argues that physicians are unlikely to perform procedures in their own offices because of limitations on reimbursement. CaroMont does not address the ability of doctors to move their practices and procedures to other facilities whenever they wish even though this ability is the basis for their claim of substantial prejudice.

Turning to the fourth reason, the Agency determined that the CON Section made a reasonable health planning judgment in deciding that there was sufficient volume for a total of 10 endoscopy rooms in Gaston County. In support of this determination, the Agency relied on Mr. Legarth's admission that the methodology used by the CON Section and the GGC application's projected total numbers of Gaston County citizens needing GI endoscopy procedures were both reasonable. The Agency noted -- and CaroMont does not dispute -- that "Mr. Legarth's disagreement with the methodology was because he believed the GGC Application was premised on a higher volume of patients choosing to stay in Gaston County than he believed was reasonable."

After acknowledging CaroMont's contention that GGC's projections were not reasonable because not all of the Gaston County residents having procedures done in other counties would return to Gaston County, the Agency weighed the evidence. It found that "[t]he preponderance of the evidence shows that the projected volume of Gaston County GI endoscopy cases in the GGC Application is reasonable and could support all ten GI endoscopy procedure rooms -- both the eight operated by CaroMont and the two proposed by GGC."

In support of this finding, the Agency relied on testimony from the CON Section that the Section performed independent calculations of the volume of endoscopy procedures that would be needed based not

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

only on the return of Gaston County patients to Gaston County, but also on the projected patient population in the future, the aging of the Gaston County population, and the possibility of recruiting additional gastroenterologists to Gaston County. Those independent calculations demonstrated that "Gaston County did, indeed, need an additional freestanding GI endoscopy facility and that there would be enough GI endoscopy procedures by GGC's projected third year of operation in 2014 to support 10 GI endoscopy rooms." The Agency, therefore, determined that "CaroMont has also not shown harm related to the approval of the GGC Application because there is enough reasonably projected volume of GI endoscopy procedures to support all ten GI endoscopy rooms in Gaston County."

The Agency further explained why it did not find credible Mr. Legarth's opinion to the contrary that CaroMont would be underutilized as a result of GGC's CON. It first questioned his methodology:

> 101. Mr. Legarth, who is not an accountant, projected CaroMont's asserted loss of endoscopy volume and revenue during the first three years of the Greater Gaston Center's operations (identified in the application as the years 2012, 2013, and 2014 but delayed due to the appeal) by combining: (1) the volumes projected for the years 2010, 2011, and 2012 in the proformas contained in the CaroMont Endoscopy Center CON application filed in October 2007; (2) the utilization projections for 2012, 2013 and 2014 contained in the GGC Application filed in October 2011; (3) patient origin data from 2011 License Renewal Applications for the time period October 1, 2009 until September 30, 2010; and (4) CaroMont financial data provided to Mr. Legarth that he did not know how [it] was created or what information was used. *To make his projections, Mr. Legarth used historical data and projections from different years and did not rely upon audited financial statements.*

(Emphasis added.) In other words, in calculating the under-utilization of CaroMont, Mr. Legarth treated actual historical data as the same thing as projections, merged projections from different years in order to develop new projections, and used unaudited financial data.

In addition, the Agency pointed out that when projecting CaroMont's losses in the future, "Mr. Legarth's projections did not take into account the numerous changes CaroMont could make with respect to the

IN THE COURT OF APPEALS 15

CAROMONT HEALTH, INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[231 N.C. App. 1 (2013)]

management, and operations of its endoscopy rooms to increase the capacity, utilization, and market share of the rooms but instead assumes that the volumes obtained by CaroMont from October 1, 2009 until September 30, 2010 will remain stagnant." Further, it noted that Mr. Legarth was unaware of the fact that CaroMont had, at the time of the Agency's approval of the GGC application, successfully recruited two additional gastroenterologists. He had not, therefore, in making his projections, taken into account CaroMont's adding additional gastroenterologists to perform endoscopy procedures.

For those reasons, the Agency determined that "it is not reasonable to rely on Mr. Legarth's projections of loss of endoscopy volume and revenue by CaroMont as a result of the approval of the GGC Application." As additional support for its findings, the Agency noted:

> 106. Furthermore, Mr. Legarth could not predict with any reasonable degree of certainty that the losses he projected would occur or would be proximately caused in the future as a direct result of the CON Section's approval of the GGC Application because the decrease in the number of GI endoscopy patients going to Gaston Memorial Hospital began before the approval of the application and CaroMont had the ability to take myriad measures to increase the utilization of its endoscopy rooms.

In sum, the Agency found the applicant's and the CON Section's evidence more credible and entitled to greater weight than CaroMont's evidence. Mr. Legarth may have attempted to quantify projected losses from approval of GGC's CON, but, even assuming these losses went beyond normal competition, the Agency found that the data relied upon by Mr. Legarth was flawed and his analysis omitted critical factors that could diminish the projected losses. Further, Mr. Legarth was unable to predict with any reasonable degree of certainty that the losses would in fact occur or would be caused in the future by the approval of GGC's application because (1) CaroMont's decrease in volume had begun before approval of the application and (2) CaroMont could take steps to increase use of its endoscopy rooms. In other words, as the Agency concluded, Mr. Legarth's projections of harm were speculative.

The Agency's findings regarding Mr. Legarth's testimony and methodology are supported by the record, and the decision of the Agency to credit the projections made by GGC rather than those made by CaroMont " 'has a rational basis in the evidence' " and, therefore, satisfies the whole record test. *Hosp. Grp. of Western N.C., Inc. v. N.C.*

*Dep't of Human Res.*, 76 N.C. App. 265, 268, 332 S.E.2d 748, 751 (1985) (quoting *In re Rogers*, 297 N.C. 49, 65, 253 S.E.2d 912, 922 (1979)). We decline CaroMont's invitation that we ignore Rule 41's requirement that the Agency assess "the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them" and substitute our judgment for the Agency's. *Hill*, 135 N.C. App. at 517, 520 S.E.2d at 800.

In *Wake Radiology*, this Court affirmed the Agency's determination that Wake Radiology failed to show substantial prejudice when the Agency similarly found that the testimony of Wake Radiology's witnesses regarding declines in volumes and payor mix did not address numerous relevant factors, the data underlying the testimony was not reliable, and, because the declines had begun before approval of the CON application, Wake Radiology had "failed to establish how, or to what extent, the service that [the applicant] would be authorized to provide under the CON would result in additional harm to Wake over and above that inherent in existing market conditions." *Wake Radiology*, 2011 WL 3891026, at *9, 2011 N.C. App. LEXIS 1924, at *23-24.

This Court concluded that the Agency's findings and conclusions "provide[d] ample justification" for the Agency's determination that Wake Radiology had failed to establish that it would be substantially prejudiced by the issuance of the requested CON. *Id.*, 2011 N.C. App. LEXIS 1924, at *26. The Court noted that the Agency's "determination that [the Wake Radiology witness'] testimony was speculative, founded on flawed logic, and insufficient to require a finding in Wake's favor [had] ample record support. This determination, in turn, adequately supports the [Agency's] conclusion that Wake failed to satisfy its burden of proof with respect to the 'substantial prejudice' issue. Wake's argument to the contrary amounts to a request that we revisit the [Agency's] factual determinations and reach a different result than that found appropriate by the relevant administrative agency. We are not at liberty to take such a step under the applicable standard of review." *Id.* at *10, 2011 N.C. App. LEXIS 1924, at *27. The Court, therefore, affirmed. *Id.*, 2011 N.C. App. LEXIS 1924, at *28. *See also Parkway Urology*, 205 N.C. App. at 539, 696 S.E.2d at 194 (in affirming Agency's determination that non-applicant had failed to show substantial prejudice, noting that evidence showed that utilization of non-applicant's services had been declining for number of years before CON approval).

We find this case materially indistinguishable from *Wake Radiology*, which is persuasive authority, and *Parkway Urology*. Just as this Court concluded in *Wake Radiology*, it is not enough that the non-applicant's

witness simply attempts to quantify the projected harm. The evidence must both be persuasive and demonstrate that the harm was caused by the CON approval. Because, in this case, the Agency found, after reviewing all of the evidence, that CaroMont's projections of harm were based on flawed data, failed to take into account relevant factors, were not reasonably certain to occur, and were not shown to be caused by the CON approval as opposed to market forces, the Agency was entitled to conclude that CaroMont's evidence was insufficient to show substantial prejudice as a result of the approval of GGC's application. Consequently, we affirm.

Affirmed.

Judges STEELMAN and ROBERT N. HUNTER, JR. concur.