An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-161

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

SURGICAL CARE AFFILIATES, LLC AND
FAYETTEVILLE AMBULATORY SURGERY
CENTER LIMITED PARTNERSHIP,
    Petitioner,

    v.

NC DEPARTMENT OF HEALTH AND HUMAN
SERVICES, DIVISION OF HEALTH
SERVICE REGULATION, CERTIFICATE
OF NEED SECTION,
    Respondent,

and

FIRSTHEALTH OF THE CAROLINAS,
INC.,
    Respondent-Intervenor.

From the Office of
Administrative Hearing
(Cumberland County)
No. 12 DHR 12086

_____

CUMBERLAND COUNTY HOSPITAL
SYSTEM INC. d/b/a CAPE FEAR VALLEY
MEDICAL CENTER,
    Petitioner,

    v.                      No. 12 DHR 12090

NC DEPARTMENT OF HEALTH AND
HUMAN SERVICES, DIVISION OF
HEALTH SERVICE REGULATION,
CERTIFICATE OF NEED SECTION,
    Respondent,

    and

FIRSTHEALTH OF THE CAROLINAS,
INC.,

Respondent-Intervenor.
_____

CUMBERLAND COUNTY HOSPITAL
SYSTEMS, INC. d/b/a CAPE FEAR
VALLEY HEALTH SYSTEM,
    Petitioner,

    v.

NC DEPARTMENT OF HEALTH AND HUMAN  No. 12 DHR 12094
SERVICES, DIVISION OF HEALTH
SERVICE REGULATION, CERTIFICATE OF
NEED SECTION,
    Respondent,

and

FIRSTHEALTH OF THE CAROLINAS,
INC.,
    Respondent-Intervenor.


Appeal by petitioner Cape Fear from Final Decision entered 17 September 2013 by Administrative Law Judge Beecher R. Gray in the Office of Administrative Hearings. Heard in the Court of Appeals 13 August 2014.


    *K&L Gates LLP, by Gary S. Qualls, Susan K. Hackney, and Steven G. Pine, for petitioner.*

    *Attorney General Roy Cooper, by Special Deputy Attorney General June S. Ferrell and Assistant Attorney General Scott T. Stroud, for respondent.*

    *Nelson Mullins Riley & Scarborough LLP, by Noah H. Huffstetler, III, Denise M. Gunter, and Candace S. Friel, for respondent-intervenor.*

ELMORE, Judge.

Cumberland County Hospital System, Inc. d/b/a Cape Fear Valley Health System (Cape Fear) timely appeals from a Final Decision entered 17 September 2013 by Administrative Law Judge Beecher R. Gray (the ALJ), which upheld the North Carolina Department of Health and Human Services, Division of Health Service Regulation, Certificate of Need Section's (the Agency) decision to award a Certificate of Need (CON) to FirstHealth of the Carolinas, Inc. d/b/a FirstHealth Moore Regional Hospital (FirstHealth) and to deny the competing CON application filed by Cape Fear. After careful consideration, we affirm.

## I. Background

This case originates from the need determination in the 2012 State Medical Facilities Plan (SMFP) for 28 additional acute care beds in the Cumberland/Hoke Acute Care Bed Service Area. On 15 June 2012, FirstHealth and Cape Fear each filed CON applications to meet the need for these additional beds. On 27 November 2012, the Agency issued its decision to approve the FirstHealth application. The Agency concluded that FirstHealth conformed to all applicable statutory criteria and administrative rules, and was comparatively superior to Cape Fear's application. With regard to Cape Fear's application, the

Agency, in relevant part, found that Cape Fear non-conformed with Criteria 20 in N.C. Gen. Stat. § 131E-183(a)(20) because it failed to demonstrate that it had provided quality care in the past.

On 21 December 2012, Cape Fear filed a contested case petition challenging the Agency's decision to grant FirstHealth's application. Before the ALJ conducted a hearing on the comparative analysis of the two applications, Cape Fear filed a motion for partial summary judgment, asserting in relevant part, that the Agency erred in finding the Cape Fear application non-conforming with Criteria 20. The ALJ granted Cape Fear's motion for summary judgment, ruling that the Agency erred in finding Cape Fear non-conforming with Criterion 20. After the ALJ granted Cape Fear's motion, he conducted a hearing on the Agency's comparative analysis of the two applications. On 17 September 2013, the ALJ entered a Final Decision upholding the Agency's decision to approve FirstHealth's application. Cape Fear filed timely notice of appeal from the ALJ's Final Decision.

## II. Analysis

### a.) Substantial Prejudice

First, Cape Fear argues that the ALJ erred by concluding that Cape Fear was not substantially prejudiced by the Agency's decision to deny Cape Fear's CON application. Specifically, Cape Fear avers that a competitive CON applicant is substantially prejudiced as a matter of law solely by its denial. We disagree.

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2 (2006). N.C. Gen. Stat. § 150B-51 (2013) echoes this rule:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
>> (1) In violation of constitutional provisions;
>>
>> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>>
>> (3) Made upon unlawful procedure;
>>
>> (4) Affected by other error of law;
>>
>> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire

record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

(c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

Because Cape Fear challenges the ALJ's legal conclusion that Cape Fear was not substantially prejudiced as a matter of law, we review this issue *de novo*.

After the Agency denies a CON application, the denied applicant is considered to be an "affected person" under N.C. Gen. Stat. § 131E-188(c) (2013). An "affected person" "shall be entitled to a contested case hearing" pursuant to N.C. Gen. Stat. § 131E-188(a) (2013). However, the "requirement that a petitioner be an affected person provides only the statutory grounds for and prerequisites to filing a petition for a contested case hearing regarding CONs." *CaroMont Health, Inc.*

*v. N. Carolina Dep't of Health & Human Servs. Div. of Health Serv. Regulation, Certificate of Need Section*, ___ N.C. App. ___, ___, 751 S.E.2d 244, 248 (2013) (citation and quotation marks omitted). "The actual framework for *deciding* the contested case is governed by Article 3 of Chapter 150B of the General Statutes." *Parkway Urology, P.A. v. N. Carolina Dep't of Health & Human Servs., Div. of Health Serv. Regulation, Certificate of Need Section*, 205 N.C. App. 529, 536, 696 S.E.2d 187, 193 (2010) (citation omitted). An "affected person" must show that the Agency substantially prejudiced the petitioner's rights by acting pursuant to any of the grounds in subdivisions (1)-(6) of N.C. Gen. Stat. § 150B-51(b) above. N.C. Gen. Stat. § 150B-51(b).

In *CaroMont Health*, a denied applicant filed a petition for a contested hearing to challenge the Agency's approval of a competitor's CON application. *CaroMont Health*, __ N.C. App. at __, 751 S.E.2d at 247. The ALJ dismissed the petition, in part, because the denied competitive CON applicant failed to show "that its rights were 'substantially prejudiced'[.]" *Id.* On appeal to this Court, the denied applicant argued that it demonstrated substantial prejudice "simply by showing that it was an 'affected person[.]'" *Id.* at __, 751 S.E.2d at 248.

This Court rejected the denied applicant's argument, holding that its status as an "affected person" did not relieve its duty to prove substantial prejudice. *Id*.

Similarly, Cape Fear suggests that by merely being an "affected person" under N.C. Gen. Stat. § 131E-188(a), a denied competitive CON Applicant, it automatically establishes substantial prejudice. However, our case law, highlighted by *CaroMont* above, illustrates that Cape Fear must present other evidence at a contested case hearing to demonstrate substantial prejudice—its mere status as a denied competitive CON applicant alone is insufficient as a matter of law. *See id; see also Parkway Urology*, 205 N.C. App. at 536-37, 696 S.E.2d at 193 (rejecting appellant's argument that, simply by virtue of its "affected person" status, "it was unnecessary for it to show substantial prejudice to be entitled to relief").

Alternatively, Cape Fear argues that it demonstrated substantial prejudice because it had no further relief from its "high utilization and occupancy levels" after its 28-bed application was denied. We disagree.

Cape Fear's argument initially fails because it does not argue that the Agency acted according to any ground in subdivision (1)-(6) of N.C. Gen. Stat. § 150B-51(b). Moreover,

Cape Fear had other options to relieve its alleged capacity restraints. At the time of the ALJ's review, Cape Fear had not developed two additional acute care bed projects that would have provided 106 additional beds. Also, based on its present licensed capacity, Cape Fear could have requested a temporary increase in its bed capacity by 49 acute care beds. *See* North Carolina Administrative Code, 10A N.C.A.C. 13B.3111(a) (2013) (allowing a hospital to request a ten percent temporary increase in its licensed bed capacity for sixty days). Furthermore, Cape Fear has 129 observation beds that can help with the day-to-day management of the patient census. Because Cape Fear had many other options to relieve its alleged capacity constraints, we hold that Cape Fear has failed to demonstrate that it was substantially prejudiced.

**b.) The Britthaven Standard**

Next, Cape Fear argues that the Agency did not perform a complete and correct *Britthaven* analysis. Specifically, Cape Fear argues that because the Agency erred in Stage 1 of its *Britthaven* analysis (finding Cape Fear non-conforming with the Criterion 20 Quality issue), the Agency's *Britthaven* Stage 2 analysis was tainted. Accordingly, Cape Fear contends that the ALJ could not perform a proper *Britthaven* analysis, which

constitutes error sufficient to require the Agency to conduct a second review of Cape Fear's application. We disagree.

The *Britthaven* standard sets forth a two-pronged procedure for the Agency to review competing CON applications. *Britthaven*, *Inc. v. N. Carolina Dep't of Human Res., Div. of Facility Servs.*, 118 N.C. App. 379, 385, 455 S.E.2d 455, 460 (1995). First, the Agency must "review each application independently against the criteria (without considering the competing applications) and determine whether it is either consistent with or not in conflict with these criteria." *Id*. (citation and internal quotation marks omitted). Second, it shall make "an overall comparison of the applications and support[] its decision to grant the certificate to one applicant, and not the other, with written findings and conclusions explaining its decision." *Id*. at 385-86, 455 S.E.2d at 461.

Here, the Agency complied with the requirements of *Britthaven* in the 2012 Cumberland-Hoke 28 Acute Care Bed Review (the Review). In the Review, the Agency first "consider[ed] all of the information in each application and review[ed] each application individually against all applicable statutory and regulatory review criteria[.]" Then, the Agency "conducted a

comparative analysis of the proposals" and concluded that "the application submitted by FirstHealth is approved and the application submitted by [Cape Fear] is disapproved."

Cape Fear does not cite any legal authority in support of its proposition that because the ALJ ruled the Agency erred in concluding that Cape Fear did not conform with Criterion 20, the Agency must conduct a second review of Cape Fear's application. Pursuant to Cape Fear's argument, once the ALJ granted partial summary judgment on the Criterion 20 issue, the ALJ should not have proceeded with the Stage 2 comparative analysis. However, this proposition contradicts case law. *See Living Centers-Se., Inc. v. N.C. Dep't of Health & Human Servs., Div. of Facility Servs., Certificate of Need Section*, 138 N.C. App. 572, 581, 532 S.E.2d 192, 198 (2000)(holding the ALJ erred by 1.) failing to review the Agency's "full initial decision" and 2.) issuing her recommendation to the Agency "after only reviewing the conformity of each applicant with the criteria in N.C. Gen.Stat. § 131E-183" without conducting a comparative review analysis). Moreover, Cape Fear's proposition would have required the ALJ to remand the matter back to the Agency for a rehearing. However, an ALJ has no such authority to remand. *See* N.C. Gen. Stat. §

150B-33(b) (2013) (listing the powers of an ALJ). Accordingly, we overrule this argument on appeal.

## c.) Taint Flowing Through Comparative Analysis

Next, Cape Fear argues that because the Agency's tainted Stage 1 *Britthaven* analysis infected the Agency's Stage 2 *Britthaven* analysis, we should remand this matter to the Agency for a new review. We disagree.

An appellant carries the burden to establish not just that an error occurred "but that the alleged error was prejudicial[.]" *Bryan Builders Supply v. Midyette*, 274 N.C. 264, 272, 162 S.E.2d 507, 512 (1968) (citation and internal quotation marks omitted). An error is prejudicial if "a different result would have likely ensued had the error not occurred." *Responsible Citizens in Opposition to Flood Plain Ordinance v. City of Asheville*, 308 N.C. 255, 271, 302 S.E.2d 204, 214 (1983) (citations omitted).

Here, the Agency conducted a Stage 2 analysis under *Britthaven* by comparing the two applicants based on ten factors: geographic accessibility, access by underserved groups, demonstration of need, financial feasibility, competition, coordination with the existing healthcare system, community support, revenues, operating expenses, and quality. The Agency

concluded that it could not conclusively compare Cape Fear and FirstHealth on three of these factors, and it found that the applications were equally effective on four other factors. The Agency also determined that FirstHealth was comparatively superior to Cape Fear as to the three remaining factors—quality, geographic accessibility, and competition. Although the Agency found FirstHealth to be superior on the quality factor, Cape Fear argues that the Agency based this conclusion on its erroneous determination that Cape Fear non-conformed to Criterion 20. Even if we accept Cape Fear's contention as true, this alleged error is harmless because FirstHealth would still maintain its comparative superiority with regard to two factors, geographic accessibility and competition. *See Britthaven*, 118 N.C. App. at 383, 455 S.E.2d at 459 (asserting that the Agency's error in failing to "comport with the statutory requirements" during the review process was harmless because it did "not affect[] the outcome of the Agency decision"). Accordingly, any taint in the Agency's Stage 2 *Britthaven* analysis was not prejudicial. Thus, Cape Fear's argument fails.

### d.) The ALJ's "de novo" Review

Next, Cape Fear argues that the ALJ erred by conducting a *de novo* review by "superimposing new findings" onto the

comparative analysis that the Agency did not make. We disagree.

"Under Chapter 150B, a petitioner is afforded a full adjudicatory hearing before the ALJ, including an opportunity to present evidence and cross examine witnesses." *Britthaven*, 118 N.C. App. at 382, 455 S.E.2d at 459. However, "[t]he subject matter of a contested case hearing by the ALJ is an agency decision." *Id.* Accordingly, "the purpose of the ALJ's determination in a CON case is to review the correctness of the Department's decision utilizing the standards enunciated in N.C. Gen. Stat. § 150B-23(a) rather than to engage in a *de novo* review of the evidentiary record." *E. Carolina Internal Med., P.A. v. N. Carolina Dep't of Health & Human Servs., Div. of Health Serv. Regulation, Certificate of Need Section*, 211 N.C. App. 397, 405, 710 S.E.2d 245, 252 (2011). Ultimately, the ALJ must determine whether the petitioner has met its burden in showing, by the greater weight of the evidence, that the Agency substantially prejudiced petitioner's rights by acting outside its authority, acting erroneously, acting arbitrarily and capriciously, using improper procedure, or failing to act as required by law or rule when the Agency denied petitioner's

application.  *Britthaven*, 118 N.C. App. at 382, 455 S.E.2d at 459 (citing N.C. Gen. Stat. § 150B-23(a)).

If we accepted Cape Fear's argument on appeal, any finding made by the ALJ that was not previously made by the Agency would constitute a review *de novo*.  Cape Fear misconstrues the meaning of "*de novo*."  "The word *de novo* means fresh or anew; for a second time[,]" as if the action had not previously been decided.  *Caswell Cnty. v. Hanks*, 120 N.C. App. 489, 491, 462 S.E.2d 841, 843 (1995) (internal citation and quotation marks omitted).  "A court empowered to hear a case *de novo* is vested with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court."  *Id*. (citation and quotation marks omitted)  In contrast, here, the ALJ was only reviewing the Agency's decision.  The ALJ's findings of fact and conclusions of law were made pursuant to the same criteria and evidence considered by the Agency.  Such findings, which are required by statute, were necessary to determine whether Agency error occurred and do not amount to a review *de novo*.  *See* N.C. Gen. Stat. § 150B-34(a) (2013).  To otherwise require an ALJ to make only those findings previously made by the Agency whose

decision is under review would render the review meaningless. As such, Cape Fear's argument is without merit.

## e.) Comparative Factors

Next, Cape Fear argues that the ALJ erred in affirming the Agency's comparative analysis of the following factors: access by underserved groups, geographic accessibility, and competition. In essence, Cape Fear avers that the Agency lacked substantial evidence to support its conclusions. We disagree.

A party that asserts error based on "the Agency's findings, inferences, conclusions, or decisions" as being "[u]nsupported by substantial evidence admissible . . . in view of the entire record as submitted[,]" triggers the whole-record test standard of review. *WakeMed v. N. Carolina Dep't of Health & Human Servs., Div. of Health Serv. Regulation*, __ N.C. App. __, __, 750 S.E.2d 186, 189 (2012), *review denied,* __ N.C. __, 743 S.E.2d 204, 205 (2013). The whole-record test requires this Court to:

> determine whether the Agency's decision is supported by substantial evidence—relevant evidence that a reasonable mind could conclude supports a decision. Significantly, we may not substitute our judgment for that of the Agency's regardless of whether the record contains evidence that could support a conclusion different than that reached by the Agency.

*Id.* at __, 750 S.E.2d at 190 (citations omitted).

We now discuss each of the comparative factors challenged by Cape Fear.

<u>1. Access by Underserved Groups</u>

Cape Fear argues that the Agency erred by "disregarding the extent to which [Cape Fear] was comparatively superior to [FirstHealth]" regarding access to underserved groups because Cape Fear projected higher Medicaid access. Accordingly, Cape Fear argues that it was comparatively superior to FirstHealth on this factor, not merely comparable as ruled by the Agency and subsequently affirmed by the ALJ. We disagree.

Here, the Agency's finding that the applicants were comparable as to servicing Medicare recipients is undisputed, but the Agency also found that Cape Fear would provide 24.6% of its services to Medicaid recipients compared to 10.4% for FirstHealth. However, Cape Fear's facility "offere[ed] obstetrical services, a service which often has a high percentage of Medicaid recipients. In contrast, obstetrical services will not be offered at [FirstHealth]." Moreover, evidence was presented that Cape Fear's Medicare Provider Agreement was at risk of revocation. According to the Agency's Chief, actual revocation of the agreement would result in Cape

Fear's inability "to live up to their projections" for both Medicaid and Medicare recipients. Thus, the Agency's decision to not find Cape Fear conclusively superior to FirstHealth as to this comparative factor was supported by substantial evidence due to the fundamental differences in the services offered between the two applicants and the status of Cape Fear's Medicare Provider Agreement. Thus, the ALJ did not err by affirming the Agency's decision.

2.Geographic Accessibility

Cape Fear argues that the Agency's bed-to-population analysis in determining that FirstHealth was comparatively superior in geographic accessibility was erroneous, and the ALJ erred in affirming the Agency's decision. We disagree.

Here, the Agency indicated that Cumberland County had 555 existing or approved acute care beds. Out of the 555 beds, 490 are located at Cape Fear in Fayetteville, with the remaining 65 located at Cape Fear North about 12 miles away in a different part of Fayetteville. Hoke County, however, only had 49 existing or approved acute care beds, with 41 approved beds at Cape Fear's Hoke County location and 8 beds at FirstHealth Hoke. The Agency then calculated the current ratio of existing and approved acute care beds to the population in each county,

respectively based on 2016 population data. The calculation showed that the ratio in Cumberland County was 1 acute care bed per 608 people, and 1 acute care bed per 1,132 people in Hoke County. Accordingly, the Agency determined that by awarding the 28 acute care beds to FirstHealth, the total number of approved beds in Hoke County would increase to 77, which would result in 1 acute care bed for every 720 people in Hoke County. Such relevant evidence reasonably supports the Agency's decision that FirstHealth was comparatively superior in geographic accessibility.

We also note that Cape Fear does not argue the inaccuracy of the Agency's calculations but merely states that the Agency should have used a different analysis, one that incorporated in-migration, out-migration, and acuity. Although Cape Fear disagrees with the Agency's methodology, it fails to show that the Agency's approach constituted error. Thus, the ALJ did not err in affirming the Agency's decision.

## 3. Competition

Cape Fear also argues that the Agency exceeded its statutory authority in using "competition" as a comparative factor because both applicants were existing providers, and the ALJ erred by affirming the Agency's decision. We disagree.

We review this issue on appeal *de novo*, "freely able to substitute our judgment for that of the Agency." *Total Renal Care Of N. Carolina, LLC v. N. Carolina Dep't of Health & Human Servs., Div. of Facility Servs., Certificate of Need Section*, 171 N.C. App. 734, 740, 615 S.E.2d 81, 85 (2005). While this Court will give some deference to an Agency's interpretation of a statute, it is not binding. *Id.* (citation and quotation marks omitted). "The weight of such an interpretation in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* (citation and quotation marks omitted).

Cape Fear's argument lacks merit. Cape Fear has provided no legal authority to support its assertion that "competition" is only a relevant factor when one of the applications is a new provider to the area. The Agency is free to use any comparative factor it deems applicable during a comparative analysis. *See Parkway Urology*, 205 N.C. App. at 547, 696 S.E.2d at 199 ("There is no statute or rule which requires the Agency to utilize certain comparative factors.").

Additionally, N.C. Gen. Stat. § 131E-183(18a) (2013) contemplates "competition" as a valid consideration in the Agency's decision to grant a certificate of need application: "The applicant shall demonstrate the expected effects of the proposed services on competition in the proposed service area, including how any enhanced competition will have a positive impact upon the cost effectiveness, quality, and access to the services proposed[.]"  As such, this Court has accepted "competition" as a relevant factor during comparative analysis of certificate of need applications.  *See Total Renal Care*, 171 N.C. App. at 741, 615 S.E.2d at 85 (holding that the Agency "did not exceed its statutory authority in using enhanced competition and consumer choice as key factors in a comparative analysis").

Moreover, "competition" is certainly a relevant factor in this case because Cape Fear controlled 596 of the 604 existing or approved acute care beds in the Cumberland/Hoke Acute Care Bed Service Area, while FirstHealth only controlled the remaining 8 beds.  While Cape Fear also argues that the Agency should have considered a broader service area, the Agency properly considered only the Cumberland/Hoke Acute Care Bed Service Area as articulated in the SMFP needs determination. *See* North Carolina Administrative Code, 10A N.C.A.C. 14C.0402

("The correctness, adequacy, or appropriateness of criteria, plans, and standards shall not be an issue in a contested case hearing.").

Thus, the Agency did not exceed its statutory authority by utilizing competition as a comparative factor. The Agency also reasonably concluded that an approval of FirstHealth's application was superior with regard to increasing competition. Accordingly, the ALJ did not err in affirming the Agency's decision.

## f.) FirstHealth's Conformity with Review Criteria

Finally, Cape Fear argues that the Agency erred in finding that FirstHealth's application conformed to certain review criteria, and therefore, the ALJ erred by affirming the Agency's decision. We disagree.

Fatal to Cape Fear's position is its failure to present any evidence from the record that would suggest the Agency exceeded its authority, acted erroneously, failed to use proper procedure, acted arbitrarily or capriciously, or failed to act as required by law. *See* N.C. Gen. Stat. § 150B-23(a). To successfully challenge the Agency's decision, a petitioner must first "state facts tending to establish that the agency acted unlawfully for one or more of the specific reasons" set forth in

N.C. Gen. Stat. § 150B-23(a). *E. Carolina Internal Med.*, 211 N.C. App. at 410, 710 S.E.2d at 255 (citation and quotation marks omitted). The facts alleged by Cape Fear, however, are either speculative or irrelevant to the issue of agency error.

First, Cape Fear argues that FirstHealth failed to conform to Criterion (1) because FirstHealth proposed to shift some patients from its facilities in the Moore/Hoke Service Area to the Cumberland/Hoke Service Area. Criterion (1) requires that the proposed project "be consistent with applicable policies and need determinations in the State Medical Facilities Plan[.]" N.C. Gen. Stat. § 131E-183(a)(1) (2013). The need determination defines the general area in which the beds must be located but does not restrict where the patients who will be treated in those beds will reside. Rather, it is up to the applicant to define patient origin. Therefore, FirstHealth's proposal to shift some patients from FirstHealth Moore to FirstHealth Hoke was not relevant to the Agency's analysis under Criterion (1).

Second, Cape Fear claims that FirstHealth "inappropriately included tertiary level services in its utilization assumptions for a community hospital," thereby overstating its projected utilization and rendering its application non-conforming. Yet Cape Fear does not direct our attention to any portion of the

record that reveals FirstHealth included tertiary services in its utilization assumptions, and it violates N.C. R. App. P. 28(b)(6) by failing to do so. *See* N.C. R. App. P. 28(b)(6) (2007) ("Evidence or other proceedings material to the issue may be narrated or quoted in the body of the argument, with appropriate reference to the record on appeal, the transcript of proceedings, or exhibits."); *see also Hudgins v. Wagoner*, 204 N.C. App. 480, 496, 694 S.E.2d 436, 448 (2010) (noting defendants' violation of Rule 28(b)(6) where they failed to support an assertion "with any reference to the multi-volume transcript of the proceedings at trial or to the record").

Notwithstanding Cape Fear's appellate rules violation, FirstHealth's application specifically states: "By excluding services that are not planned to be provided at [FirstHealth Hoke] because of the capacity of the hospital, the availability of a medical or surgical specialist, *and/or the need for the patient to receive care at a tertiary care facility*, FirstHealth is decreasing the number of inpatient and inpatient days of care that are available to 'shift' to [FirstHealth Hoke]."

Third, Cape Fear alleges that FirstHealth's application projected utilization figures that were "impossible" to achieve with the one operating room it had been approved for at the time

of the review.  Yet again, Cape Fear has failed to support its argument with any facts or direct our attention to any relevant portion of the record to demonstrate that FirstHealth's projected utilization figures were "impossible" to reach with only one approved operating room.

As Cape Fear has failed to "state facts tending to establish" agency error with respect to any of the reasons enumerated under N.C. Gen. Stat. § 150B-23(a), Cape Fear's arguments fail.

### III. Conclusion

In sum, we affirm the ALJ's Final Decision.  Cape Fear has failed to show that it was substantially prejudiced by the Agency's decision, neither the Agency nor the ALJ violated the *Britthaven* Standard, any error flowing to the Agency's comparative analysis would be harmless, the ALJ did not conduct a *de novo* review of the Agency's decision, the ALJ did not err in affirming the Agency's finding that FirstHealth was comparatively superior to Cape Fear, and Cape Fear failed to show that FirstHealth non-conformed with the Review Criteria.

Affirmed.

Judges CALABRIA and STEPHENS concur.

Report per Rule 30(e).